# Wheeling.

## IRWIN *et al. v.* ZANE *et al.*

### Decided November 15, 1879.

1879
Special Term.

1. The heir must not be disinherited, unless it is done by the express terms of the will, or by necessary implication.

2. When a man makes his will, the presumption, in the absence of evidence to the contrary, is that he intends thereby to dispose of his whole estate.

3. General words in a residuary clause will carry every estate or interest of the testator, which is not expressly, or by necessary implication, excluded from its operation.

4. A bequest of "all my lots or other ground not otherwise disposed of by will or deed," includes the *reversion* in a parcel of land, in which the testator had devised a life-estate to another by the same will.

5. Testator had given his son, Daniel, a life-estate in a certain lot of ground, and in the third clause of his will says: "I direct that all my stocks of whatever kind, and all my lots or other ground not otherwise disposed of by will or deed, including all ground or land owned by me and lying within the county of Belmont, in the State of Ohio, be sold by my executors, and out of the sales, or money thus raised, that all of my just and lawful debts be paid, *and the residue* after the payment of my just and lawful debts, as aforesaid, I give and bequeath to my daughter Indiana, wife of Aaron McSwords. HELD:

   The *reversion* in the ground devised to Daniel for life passed by the residuary clause in the will.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ohio, rendered on the 10th

day of August, 1878, in a cause in said court then pend-
ing, wherein Isaac Irwin, trustee for Daniel F. Zane, and
Daniel F. Zane were plaintiffs, and C. Leander Zane
and others were defendants, allowed upon the petition of
said plaintiffs.

Hon. Thayer Melvin, judge of the first judicial circuit,
rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of
the case :

At the March rules, 1878, of the circuit court of Ohio
county, the plaintiffs filed their bill against C. L. Zane,
Indiana McSwords, and others, heirs at law of Daniel
Zane, deceased.

The bill alleges that Daniel Zane departed this life in the
year 1860, leaving a will, which was duly admitted to
probate, &c., a copy of which is exhibited with the bill.
The plaintiffs further proceed to give a description of
the particular tracts of land mentioned in the said will.
The bill charges that *the reversion of the tract of land, out
of which the will gives to the plaintiff, Daniel Zane, a life
estate*, was not disposed *of by said will, and as to such re-
version the said testator died intestate.*

The bill further alleges, that as the plaintiff, Daniel
F. Zane, is one of the nine heirs at law of said Daniel,
and that as the fee simple of one undivided ninth of
said real estate, in which a life-estate was devised to him,
descended upon him at the death of his father, that his
life-estate as to the said one undivided ninth of said
tract, was merged in the fee, and he became the owner
in fee simple, as a tenant in common with the other heirs
of his said father, the interest of the others, however,
being subject to the life-estate of said plaintiff.

The bill further alleges that, there is a fund of $800.00,
in the hands of D. C. List, receiver of the court, and a
further sum of $2,000.00 in the hands of Isaac Irwin,
trustee, which sums were paid by the city of Wheeling
upon the condemnation of certain land included in the

tract aforesaid, devised in trust for life to the plaintiff, Daniel F. Zane, and which part of said land was taken by said city for streets, and that the said fund occupies the same position, as the said tract of land so devised as aforesaid, and that by the non-disposition of the reversion in said tract the plaintiff, D. F. Zane, is entitled absolutely to one-ninth of said sum.

The bill further alleges, that the rents and profits of said land and Zane's interest from the said fund, are entirely inadequate to the support of himself and family. He proceeds to allege why, in his opinion, the property should now be sold, and he be given his interest in money. He also alleges that the taxes are heavy, and he ought not to be compelled to pay all said taxes, and that large amounts of taxes are now in arrear.

The bill prays, that the fee simple in the said tract of land be sold, and that the proceeds of said sale, as well as the sum of money aforesaid, may be so divided that one-ninth part thereof may be decreed absolutely to the said Daniel F. Zane, and that a gross sum be decreed to said Daniel F. in lieu of his life-estate in the remaining eight-ninths thereof; or if it be the opinion of the court that the whole interest of the said Daniel is simply a life-estate in the entire tract, then that the proceeds of such sale be divided so that a gross sum may be decreed to the said Daniel in lieu of such life-estate; that such orders and decrees shall be made as to protect the plaintiffs from paying more than a just proportion of the said taxes; and for general relief.

All the other heirs at law of the said Daniel Zane, deceased, were made defendants to the bill.

The only two clauses of the will, that can have any bearing upon the case attempted to be made by the bill, are as follows:

"*Secondly*—I give and bequeath to my wife, Angeline P. Zane, in fee, in lieu of dower in my estate, the south undivided one-half of the tract called the homestead tract, the whole of which tract contains twenty-one acres,

one rod, and 4-100, more or less; and the north undivided one-half of said homestead tract, including the mansion house, in which I have so long lived, I give and bequeath to ———, to be held by him in trust, for the use and benefit of my son, Daniel Zane, for the term of his natural life, and the said ——— is to pay or permit and suffer my son Daniel to take the rents, issues and profits thereof for his own use and benefit during his natural life.

"*Thirdly*—I direct that all my stocks of whatever kind, and all my lots, or other ground not otherwise disposed of by will or deed, including all ground or land owned by me and lying in the county of Belmont, in the State of Ohio, be sold by my executors, and out of the sales or moneys thus raised, that all of my just and lawful debts be paid, and the residue after the payment of my debts, as aforesaid, I give and bequeath to my daughter Indiana, wife of Aaron McSwords."

There are only four clauses in the will, the *first* is: "I give and bequeath to my son, C. Leander Zane, and to my daughter, Oella Z. Cranmer, wife of Gibson L. Cranmer, jointly, the property lying and being situated on Zane's Island, known as the Marietta and Cincinnati and Hempfield railroad tract, containing twenty-three acres and thirty-two forty-three-one-hundredths poles (23 acres, 32 43-100 poles) more or less in fee simple."

The last clause is as follows: " I do hereby constitute and appoint as the executors of this my last will and testament, Gibson L. Cranmer and C. Leander Zane, hereby authorizing them to make all deeds which they may deem necessary in the execution of this my last will and testament, and hereby requesting that my said executors shall not be required to give security for the execution and performance of their duties. I hereby revoke all former last wills and testaments."

The foregoing is all of the said will except the formal parts thereof.

On the 18th of June, 1878, Indiana McSwords filed

her demurrer to the bill, in which demurrer the plaintiffs joined. For special grounds of demurrer she assigned in substance the following: First—The will only gave Daniel F. Zane a life-estate in the tract of land mentioned; and by the terms of said will he is entitled to nothing more. Second—That the estate thus devised can be disposed of by the said Daniel and his trustee without the aid of a court of chancery. Third—That under and by virtue of the third clause of the will, the defendant, Indiana Mc-Swords, is alone entitled to the residuary fund arising from the sale therein ordered. At the same time the said defendant, Indiana McSwords, filed her answer to the bill, in which she insists upon the same points made in her demurrer.

The court rendered a decree sustaining the said demurrer; and the plaintiffs not desiring to amend their bill, the said bill was dismissed as to the defendant, Indiana McSwords, with costs.

From and to this decree an appeal and *supersedeas* were allowed.

*Henry M. Russell,* for appellants, cited the following authorities:

1 Redf. Wills 428 note; *Id.* 434; 33 N. Y. 558; 79 Pa. St. 141; 14 Ves. 370; 8 W. Va. 15; 42 Barb. 578; 2 Wend. 13; 3 Rand. 191; 11 Gratt. 788; 3 Munf. 76; 3 Call 287; 13 Gratt. 128; *Id.* 136; 20 Wend. 456; 8 Ves. 12; 36 N. J. L. 460; 18 Gratt. 150; 2 Cow. 246.

*Pendleton & Pendleton,* for appellees, cited the following authorities:

2 Redf. Wills 442: 1 Wash. 111.

JOHNSON, JUDGE, delivered the opinion of the Court:

The question presented is: Should the demurrer to the bill have been sustained? The principal question raised by the said demurrer is: Did the *reversion* in the tract of land;

1879
Special Term.

Irwin *et al.*
v.
Zane *et al.*

in which a life-estate was devised by the will in the third clause thereof, pass to the said *residuary legatee*, Indiana McSwords? This is one of those cases involving the construction of a will, where much light might be obtained from a knowledge of the circumstances surrounding the testator at the time the will was executed. The principle was recognized by this Court in *Magers* v. *Edwards's adm'r et al*, 13 W. Va. 822, that "to aid in the construction of a will evidence may be received and should be sought, of any facts known to the testator which may be reasonably supposed to have influenced him in the disposition of his property, and of all the surrounding circumstances at the time of making the will; but if after resorting to all these means, the intention of the testator in a particular clause cannot be ascertained with reasonable certainty, conjecture ought not to be permitted to supply what the testator has failed sufficiently to indicate; and he must be regarded as dying intestate as to such subject.

In this cause we have nothing but the naked will, save and except the allegation of the bill, which on demurrer must be taken as true, that he left nine children. Bequests to but four appear in the will. We must take it for granted that the plaintiffs by amending their bill could not have shown such circumstance surrounding the testator at the time the will was executed as would shed additional light upon his intention, as to what should pass to the residuary legatee, as they declined to amend. We must therefore in the construction of the will look to the will itself, unaided by a knowledge of such circumstances if they existed. That Indiana McSwords was made the residuary legatee of Daniel Zane's will there is no doubt. In deciding what passed to her by the third clause of the will, the polestar to guide us, must of course be the intention of the testator. While it is true, that the heirs must not be disinherited, unless it is done by either the express terms of the will or by necessary implication; yet it is equally true, that when a man makes

Syllabus 1.

Syllabus 2.

1879
Special Term.

Irwin. et al.

v.

Zane et al.

his will, the presumption, in the absence of evidence to the contrary, is that he intends thereby to dispose of his whole estate. *Smith's ex'r* v. *Smith et al.*, 17 Gratt. 274. A testator often manifests his intention to dispose of his whole estate, by using such language at the commencement of his will, as the following: "I dispose of my estate in the following manner." In the will before us we are deprived of this index to the intention of the testator. In the *third* clause of the will the testator uses the following language : "I direct that all of my stocks of whatever kind, and all my lots of ground, not otherwise disposed of by will or deed, including all ground or land owned by me and lying within the county of Belmont, in the State of Ohio, be sold by my executors, and out of the sale or money thus raised, that all my just and lawful debts be paid, and the *residue*, after the payment of my just and lawful debts as aforesaid, *I give and bequeath to my daughter Indiana, wife of Aaron McSwords.*" Is this language sufficient to pass to the residuary legatee the *reversion* in the tract of land, or lot, a life-estate in which the testator by the second clause of his will devised to Daniel F. Zane?

In *Wheeler* v. *Walroone,* Al. 28, decided about two hundred years ago, the testator had given the manor of D. in Somersetshire for six years to A., and part of the other lands to B. in fee, and then said, "And the rest of all my lands in Somersetshire, or elsewhere, I give to my brother and the heirs of his body." It was held that the *reversion* in the manor of D. passed by the residuary clause.

In *Doe on demise of the Earl and Countess Cholmondely* v. *Weatherby et al,* 11 East. 321, it was held that "a remote reversion of a settled estate will pass by the general words of a residuary clause in a will by which the testator having before devised certain other real estate in strict settlement, and given annuities for life to A., B. and C. which annuities he charged upon 'all and singular his manors, lands, tenements and hereditiments, &c. not be-

fore disposed of;' devised 'all and singular his said manors lands, &c.,' and other his real estate *so charged with and subject to the said three annuities as aforesaid,* although one of the annuitants had a prior life· estate in the property, the reversion of which was in the testator; for general words in a residuary clause will carry every estate or interest, which is not expressly or by necessary implication excluded from its operation; and no intention of the testator to exclude the reversion is necessarily to be implied from the circumstance, that the charge of one of the annuities could not attach upon this reversion as the other two might; and the clause will be construed *reddendo singula singulis."* We think the correct general rule was laid down in this case, that general words in a residuary clause will carry every estate or interest of the testator, which is not expressly or by necessary implication, excluded from its operation. We find no case in which this rule has been disregarded. See *Earl of Buckinghamshire et al.* v. *Marquis of Devonshire et ux·* 2. B. & P. 600; *Mostyn* v. *Champneys,* 27 Eng. Com. L. 411; *Doe, dem. Moreton et ux.* v. *Fossick,* 1 Barn. & Adol. 374; *Kennon* v. *McRoberts et ux.,* 1 Wash. 96.

In the case of *Philips et ux.* v. *Melson,* 3 Munf. 76, the testator, Isaac Melson, devised his land to his wife "during her widowhood, *to raise his four youngest children on."* He gave to his son, Louis Melson, one large iron pot, his riding saddle and a black heifer; to his wife and four youngest children his two best feather beds and furniture; to his daughter, Nancy, one safe; to his daughter, Betty, one desk; and to his daughter, Polly, one square walnut table. He devised the *rest of his estate to be sold, and the money to be equally divided among his four smallest children.* Chancellor Taylor was of opinion that the residuary clause in Isaac Melson's will conveys no interest to the plaintiffs in the *real* estate; that there are no words in the will, conveying an intention in the testator to defeat the heir at law; that as the testator devised his land to his wife for life, *for her benefit* and *that of the younger*

children, it is to be fairly inferred, that he had given them *all the interest* in the *land* that he intended ; that the implication in the residuary clause is too weak to warrant the exclusion of the heir." Upon appeal, the decree of the chancellor was affirmed. Here it is not pretended that the general words of the residuary clause are not sufficient to pass the reversion, but it is in effect held that the reversion is excluded from the operation of the residuary clause by necessary implication from the former part of the will itself.

To the same effect is *Minor's executrix* v. *Dabney*, 3 Rand. 191, where the residuary clause was as follows : "I bequeath to my friend, Doctor James Dabney, of Gloucester, all my books, medicines and shop furniture, *and all the estate not before devised,* including my gig and saddle horses." The court held, that the language of the will above quoted was not a general residuary devise, but should be construed to include only property of the *same kind* as the articles enumerated. In this case the court not only looked to the other provisions of the will, but also to the depositions, to see the circumstances surrounding the testator at the time the will was executed, to ascertain what was his intention in the residuary clause ; and the court came to the conclusion, not that the words were not sufficient to pass to Dr. Dabney everything left of the estate of the testator, Dr. Spratt, but that by necessary implication all property was excluded from the operation of the said residuary clause, except that enumerated, and property of *like kind.* To the same effect is *Miars* v. *Bedgood, ex'r,* 9 Leigh 361.

The language here is : "All my lots or other ground not otherwise disposed of by will or deed, including all ground or land owned by me, and lying within the county of Belmont, and State of Ohio, be sold by my executors, &c." The words, "Including all ground or land owned by me, and lying within the county of Belmont," cannot have the effect to limit the general language, "all my lots or

other ground not otherwise disposed of by will or deed," but to make it certain to his mind that the clause would include his Belmont county land as well as the others, he particularly mentioned it. We have before seen that a devise of *land* by a testator includes all *interest* he had in the land, reversionary or otherwise. He seems to have used the terms *ground, lots* and *land* indiscriminately, and it is evident he was not using technical language, and must be understood to have included in his residuary clause, all his *interest* in *real estate* not disposed of by will or or deed, and the language was general enough to pass the *reversion* in the ground, or land, in which Daniel F. Zane was given a life interest, unless by necessary implication it was excluded from its operation. It is not claimed it is excepted from the operation of the residuary clause by express words in the will. There is nothing in the will from which it can necessarily be *implied* that the intention of the testator was that the reversion was not to pass to the residuary legatee. Unlike the case of *Philips et ux.* v. *Melson, Supra,* Indiana McSwords, received no other bequest or mention in the will, except in the residuary clause.

It is contended in argument, that the executors by the will took but a naked power to sell, and not a power coupled with an interest, and it is claimed that unless they in their life time executed that power, the devise to Indiana McSwords would be defeated. This question does not arise in this cause; there is no claim here that the heirs are entitled to the rents and profits, until the executors sell the real estate, as was the case in *Mosby's adm'r* v. *Mosby's adm'r,* 10 Gratt.; and there is no controversy here about the *legal title,* as there was in *Bell* v. *Humphreys,* 8 W. Va. The question does not arise in this cause, and no opinion upon it is expressed.

We conclude that the *reversion* in the tract, or lot of ground, devised by the will of Daniel Zane to his son, Daniel F. Zane, for life, passed under the third clause of the testator's will to his daughter, Indiana McSwords,

Syllabus 5.

subject to the limitation in said clause expressed, that it with his other property therein described to be sold by his executors was first liable to his debts.

It is claimed by plaintiff's in the bill that they are entitled to have the reversion sold, without the consent of the devisee to whom it is devised, because by so doing it would enhance the value of the life-estate, which they wish sold with it. For this rather extraordinary position no authority is cited, and we believe none can be found. The appellants seem to have abandoned it, as there is no mention made thereof in the argument. It seems to me it would be about as reasonable, for A. whose land adjoined that of B. to ask to sell B's land with his, because the two would make a good farm, and one would not, and therefore by selling them together A's farm would bring more money. It is also insisted in the cause, but not in the argument, that the reversionary interest ought to help to pay the taxes. This claim is utterly untenable. The life-tenant must himself pay the taxes.

For the foregoing reasons, the decree of the circuit court of Ohio county rendered in this cause on the 10th day of August, 1878, is affirmed with costs, and $30.00 damages. But as the bill was not dismissed as to the other defendants, it must be remanded to be further proceeded with.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED. CAUSE REMANDED FOR FURTHER PROCEEDINGS.