# CHARLESTOWN.

CRANMER v. McSWORDS.

Submitted June 6, 1884—Decided September 27, 1884.

1. The order, in which the different kinds of property, personal and real, constituting the estate of a testator, and which are liable to the payment of debts, will be subjected to debts, stated in the opinion. (p. 599.)

2. The devisee of real estate not charged with the payment of debts, when such estate has been previously subjected to the debts of the testator by creditors, may resort to a court of equity to have the real estate devised, subject to the payment of debts, to another devisee, sold to reimburse him for the value of the real estate so subjected to debts by creditors    (p. 600.)

3. In a suit in equity to enforce a purely equitable demand the defence of the statute of limitations can have no application, of itself, or by analogy to any limitation in courts of law. Such cases must be determined by courts of equity upon rules and principles of their own.    (p. 600.)

4. While in such cases *laches* and lapse of time are elements which cannot be safely disregarded, they are not always the most important considerations.   Where the lapse of time is less than twenty years, the most important considerations in support of this defence generally are : *First*, the death of the parties to the original transaction to be investigated, or the intervention of the rights of third persons; *second*, the loss of evidence when the transactions are complicated, so as to render it difficult if not impossible to do justice ; and, *third*, the character of the evidence ; for instance, if important facts rest upon mere parol testimony this will be a consideration of much weight, but if upon written or documentary evidence it will be entitled to very little weight.    (p. 601.)

5. While ignorance of law will not prevent the operation of the statute of limitations, the rule is different in equity, a court of conscience ; in such court moral as well as legal grounds may be considered, and a satisfactory moral excuse may be entertained, although it resulted from ignorance of law.    (p. 605.)

The facts of the case are stated in the opinion of the Court.

*H. M. Russell* and *W. P. Hubbard* for appellants.

*D. Lamb* and *J. O. Pendleton* for appellees.

SNYDER, JUDGE :

By deed, dated August 11, 1843, Daniel Zane conveyed to Z. Jacob and John List, trustees, all the real estate owned by him on Zane Island, opposite to the city of Wheeling, in Ohio county, in trust to secure the payment of a debt of twelve thousand five hundred dollars, due from him to the Northwestern Bank of Virginia by bond of even date with the deed and payable four years after date.   In July, 1860,

the said Zane made his will and a few days thereafter died leaving a considerable part of said debt unpaid and otherwise largely indebted to various creditors. By the said will, which was probated in Ohio county, July 13, 1860, the testator in the first clause thereof devised to his son C. Leander Zane and his daughter, Oella Z. Cranmer, the wife of Gibson L. Cranmer, jointly, a tract of twenty-three and one fifth acres of land on said Zane Island known as the "Marietta, Cincinnati and Hempfield railroad tract." In the second clause he devised to his wife, in fee, in lieu of dower, the "south undivided one half" of his homestead tract on said island and the "north undivided one-half" of said homestead tract to a trustee for the use of his son, Daniel F. Zane, for life. The third clause is as follows:

"Thirdly. I direct that all my stock of whatever kind and all my lots or other ground not otherwise disposed of by will or deed, including all ground or land owned by me and lying within the county of Belmont in the State of Ohio, be sold by my executors, and out of the sales or money thus raised, that all of my just and lawful debts be paid, and the residue, after the payment of my just and lawful debts as aforesaid, I give and devise to my daughter Indiana, wife of Amon McSwords."

By the last clause Gibson L. Cranmer and C. Leander Zane were appointed executors, and they qualified and acted as such.

All the lands thus devised and mentioned in the will, except that described as lying in Belmont county, Ohio, were included in the aforesaid trust-deed of 1843.

It seems that, after the death of the testator, his executors applied to the payment of portions of his indebtedness all of the personal estate left by the testator and, also, all the real estate of which he died seized except that devised as aforesaid to Oella Z. Cranmer and C. Leander Zane, to Daniel F. Zane for life, and the reversion after his death and also some lots in the city of Wheeling of small value. After this had been done, there still remained unpaid of the indebtedness of the testator at the time of his death two thousand four hundred and fifty dollars of the aforesaid trust-debt which had been assigned to and was then owned by Theodore Fink,

one thousand dollars due to said Fink as assignee of another creditor of the testator, eight hundred dollars to John Darrah, six hundred and twenty-five dollars to Amon McSwords, commissioner, one thousand and fifty dollars to D. Z. Phillips, assignee, &c., and various other debts, amounting in the aggregate as alleged to over twelve thousand dollars.

In 1864 the said Theodore Fink and wife brought a suit in equity in the circuit court of Ohio county to have the real estate subject to the said trust-deed of 1843, which had not been theretofore sold, including the twenty-three and one half acres devised to Oella Z. Cranmer and C. Leander Zane as aforesaid, sold and the proceeds applied to the payment of the debts of the said Daniel Zane, deceased, then unpaid and due to the said Fink and other creditors. The said Gibson L. Cranmer and C. Leander Zane, as executors and in their own rights, Oella Z. Cranmer and the said Z. Jacob, surviving trustee in said trust-deed, and, perhaps, others were made defendants in said suit; but neither the said Indiana McSwords, her husband having died before that time, nor the said Daniel F. Zane or his trustee were parties to the suit. Under decrees of the court the said Jacob, as surviving trustee and commissioner of the court, sold all the real estate so devised to Oella Z. Cranmer and C. Leander Zane. The sale was made in 1866, and the property brought fourteen thousand four hundred and sixty-six dollars and ninety cents, all of which was by orders of the court paid by said Jacob, commissioner to the creditors of Daniel Zane, deceased, whose claims had been filed and ordered to be paid in said suit, except about nine hundred and sixty-five dollars and fifty-four cents, which was paid over to said Gibson L. Cranmer and C. Leander Zane. · The precise time at which the proceeds of said sale was paid over to the creditors does not appear but as the sale was not confirmed until October 26, 1866, and one half of the purchase-money was not due until six months after the sale, it may be safely assumed that the greater part of the said creditors were not paid until during the year 1867.

In September, 1880, about thirteen years after the payment of the debts aforesaid, the said Oella Z. Cranmer and Gibson L. Cranmer, her husband, and C. Leander Zane brought

suit in the circuit court of Ohio county against the said Indiana McSwords and Daniel F. Zane and Isaac Irwin his trustee, to sell the reversion in the "north undivided one half" of the homestead tract of twenty-one and one fourth acres of land devised by the second clause of the will of Daniel Zane, deceased, to his son Daniel F. Zane for life, and to have the proceeds thereof paid to the plaintiffs to reimburse them for the value of the land devised to them by the first clause of said will and which had been sold as aforesaid to pay the debts of the testator, to the extent that such debts were paid out of the proceeds of their said land.

The defendant, Indiana McSwords, demurred to the plaintiff's bill, which demurrer was, on October 8, 1881, overruled by the court. The said defendant subsequently filed her answer in which she denies that there is any liability on her or on the reversion in the "north undivided one half" of the homestead tract, which passed to her under the third clause of her father's will by reason of the matters alleged in the plaintiff's bill. She says she claims said reversion under the said will and has so claimed it ever since the death of her father, and this fact was known to the plaintiffs for fully twenty years. She pleads the statute of limitations and relies on the *laches* of the plaintiffs, the staleness of their alleged claim and the loss of papers and the means of defending herself against the alleged demands of the plaintiffs as a complete bar in equity to this suit.

Depositions were taken by the plaintiffs and exhibits filed and, on January 30, 1884, the cause was heard, when the court entered a decree dismissing the plaintiffs' bill with costs, and they appealed to this Court.

It is stated by the counsel for the appellants in their brief that the circuit court in overruling the demurrer to the bill intended to determine all the questions presented by the bill in favor of the appellants, except with respect to the statute of limitations and *laches* of the plaintiffs in bringing this suit. As the facts, on which the appellants based their rights to be reimbursed out of the land in controversy, were fully stated in their bill, I think, it may be presumed that this statement of counsel is correct, especially as it is not controverted in the briefs of the appellee's counsel and the only questions argued

by them were those bearing on the statute of limitations and the *laches* of the appellants. In the view thus taken by the circuit court it did not err, in my opinion, in overruling the demurrer to the bill. There was no impropriety in joining the husband as plaintiff with his wife—Story's Eq. Pl. § 61; *Harrison* v. *Gibson*, 23 Gratt. 212.

It is claimed as a ground of demurrer that the existence of the deed of trust on the land devised to the appellants made it their duty to pay off said trust-debt, that it showed an intention by the testator to charge that land in their hands specifically with that debt. But the fault in this claim is, that the trust-deed covered all the lands of the testator on the island, including that out of which the reversion now sought to be sold arises—*King* v. *King*, 3 P. Wms. 358.

Mr. Lamb, counsel for the appellee, Mrs. McSwords, in his brief says: "I agree with the counsel for the appellants as to the rule which governs the application of assets of different kinds to the payment of debts. It is laid down in cases too numerous to be cited, but will be found distinctly and clearly stated in the opinion of Judge Lee, 9 Gratt. 548–9, *Elliott* v. *Carter*." He then quotes from said opinion of Judge Lee as follows:

"The order in which the different kinds or subjects of property constituting the estate of a deceased testator, and which are liable to the payment of debts, will be applied seems to be pretty clearly settled by the various adjudications that have been made upon the subject. The *first* to be so applied, is the personal estate at large not exempted by the terms of the will or necessary implication. *Next to it*, real estate or an interest therein expressly set apart by the will for the payment of debts. *Next*, real estate descended to the heir. *After it*, property, real or personal, expressly charged with payment of debts, and *then* subject to such charge, specifically devised or bequeathed. If these prove inadequate, *then* general pecuniary legacies, and *after them* specific legacies, both classes rateably; and in the *last resort* real estate devised by the will. 2 Jarman on Wills 546, and authorities cited; 4 Kent's Com. 420 *et seq.*; 1 Story's Eq. Jur. section 577. Subject to the modification indicated by this classification, and in the sense in which it explains, it is the

general rule that the personal estate is the primary fund for the discharge of the debts, and is to be first applied and exhausted, even in payment of debts for which the real estate may be expressly charged by mortgage"—2 Lomax on Ex'ors, (2d Ed.) top p. 405–7, 426. "That the devisee of real estate not charged with the payment of debts, is entitled to have the assets marshaled against the claimants of the other funds of the estate in the order stated, including specific legacies, is well settled by the authorities." 9 Gratt. 549.

The power of sale given by the will of Daniel Zane to his executors, being only for the payment of his debts, and the creditors having sold the land devised to the appellants and satisfied their debts, the executors ceased to have any power to make sales of any lands thereafter. But the creditors, instead of selling the reversion in controversy, which was primarily liable, having sold the land of the appellants, which as between the devisees, was not liable until the reversion had been exhausted, under the rule above announced, the appellants are entitled to come into equity to have the assets marshaled against the appellee, as devisee of said reversion, and have that sold to reimburse them to the extent their land was applied to the payment of the testator's debts. It follows, therefore, that neither the executors nor the creditors have any existing right of action, and that the appellants are the only parties entitled to bring suit to adjust the equities between the devise to them and the devise to the appellee. I am, therefore, of opinion that the appellants have the right to maintain this suit and that the demurrer to their bill was properly overruled.

We come now to the consideration of the defence based on the lapse of time and the laches of the appellants. This being a suit founded on a right purely equitable in its nature and without any corresponding legal right, there exists no analogy by which the statute of limitations can be applied. There is not now and never was any *legal* right in the appellants to maintain this suit. They have simply an equity which they may enforce against the reversionary interest of the appellee in question, but no personal right or demand against her. The statute of limitations, consequently, can

have no application here by analogy or otherwise. This is one of those causes purely and exclusively equitable and must be determined entirely upon the principles and rules of courts of equity regardless of any statute of limitations. The bar in such cases depends fully as much on the facts and circumstances of the particular case as it does upon the lapse of time. Laches is certainly an element which can not be safely overlooked in cases of this kind, but a review of the cases on this subject will show that it has not always been the most important. The rule stated by Lord Camden in *Smith* v. *Clay*, Amb. R. 645, has been so often quoted that it has almost become a maxim. He says: "A court of equity which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity, but conscience, good faith and a reasonable diligence; where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction there was always a limitation to suits in this court."

It must be admitted that this rule, so popular and often quoted, is altogether too general and indefinite to furnish much practicable aid in the determination of particular cases. Where the lapse of time has been less than twenty years the decided cases show that the most important considerations in support of this defence are, *first*, the death of the parties to the original transactions involved or the intervention of the rights of third persons; *second*, the loss of evidence where the transactions are complicated so as to render it difficult if not impossible to do justice; and *third*, the character of the evidence by which it is sought to establish the demand, for instance, if the important facts are to be proved by parol testimony depending on the mere recollection of witnesses. But this last consideration has very little weight when the proof is written or the subject is susceptible of clear and distinct proof. Where these elements exist, or some of them, courts have denied relief after a lapse of much less than twenty years, but I have found no case in which relief was denied when the lapse of time was less than fourteen years.

And when none of these elements exist and the court is satisfied that justice can be certainly attained notwithstanding the lapse of time, relief has been granted after a period much greater than twenty years.

In *Harrison* v. *Gibson*, 23 Gratt. 212, the court refused relief after the lapse of fourteen years from the time the cause of action arose, but the transactions sought to be reviewed transpired more than twenty years before the suit was brought, all the original parties were dead, the defendants had no knowledge of said transactions, nor had they possession of or access to documents or papers other than the records of the court, throwing any light on said transactions. The court says that it is "impossible that any such investigation can now be had as the materials for it are not now in existence." Even in this case the court did not rely wholly on these circumstances and the lapse of time, for it proceeds to show that the facts which did appear weighed in favor of the presumption that no breach of trust had been committed. This is the only case which I have found where relief was denied within less than fifteen years after the cause of action arose. The other cases relied on to sustain this defence will show that the lapse of time was much greater than fifteen years and some of them as much as fifty years. I do not deem it necessary to review these cases but cite some of them to verify the preceding views:. *Doggett* v. *Helm*, 17 Gratt. 96; *West* v. *Thornton*, 7 *Id*. 177; *Smith* v. *Thompson*, *Id*. 112; *Stamper* v. *Garnett*, 31 *Id*. 550; *Atkenson* v. *Robinson*, 9 Leigh 393; *Sullivan* v. *Portland*, 4 Otto 806; *Pusey* v. *Gardner*, 21 W. Va. 469.

I have not referred to those cases in which equity refuses relief where the demand is legal by analogy to the statute of limitations in courts of law; nor to that class of cases involving the specific execution or rescission of contracts for fraud or some infirmity or defect of which the plaintiff was fully apprised but refused to act until subsequent events showed that it might be to his advantage to act; cases in which he was silent when it was his duty to have spoken or acted, he will not be heard when he should be silent—*Marsh* v. *Whitman*, 21 Wall. 179; *Brown* v. *County of B. V.*, 5 Otto 157; *Hayward* v. *National Bank*, 6 *Id*. 611; *Caldwell* v. *Prindle*, 11

W. Va. 307; *Wayt* v. *Curwithen*, 21 *Id.* 516.   I do not con-
sider that these cases have any direct bearing on the question
under consideration.

In the case at bar the appellant's cause of action did not
arise until 1867, the time the proceeds of their land was
applied to the payment of the debts of the testator, Daniel
Zane, deceased.   Their land stood merely as surety to the
reversion now sought to be sold and the owners of this land,
like a surety in any other case, could have no cause of action
against their principal—the reversion in this case—until they
had paid the debt of the principal.   The appellants then can
be charged with no *laches* or want of diligence until 1867,
which was only thirteen years before they brought this suit.
Do the facts and circumstances shown in the cause present
such a condition of affairs as to warrant a court of equity in
denying relief?

The time which has elapsed is, of itself, plainly insufficient.
There has been no change in the relations of the parties,
either by death or in respect to the property.   The answer
avers that some of the original creditors whose claims were
paid out of the land of the appellants have died but no
attempt was made to prove this averment, and even if true,
it does not appear how the appellee could be prejudiced by
it.   The burden of proof to establish the existence and
validity of those claims rests upon the appellants and not
upon the appellee.   The record shows that these debts, so
far as they have been established, have been proved by docu-
mentary evidence—by the notes and obligations given by the
testator in his lifetime.   The matters to be investigated do
not to any considerable extent depend upon parol testimony.
This case is to some extent like the case of *Michoud* v. *Girod*,
4 How. 503, of which the court in *Badger* v. *Badger*, 2 Wall.
93, says:   "The facts of the case were 'clearly established'
by records and other written documents, and the courts were
not called on to found their decree on the frail memory or
active imagination of ancient witnesses, who may not be able,
after a great lapse of time, to distinguish between their faith
and their knowledge, between things seen or heard by them-
selves and those received from family or neighborhood gossip,
or upon that most unsafe of all testimony, conversations and

confessions—remembered or imagined—partially stated or wholly misrepresented."

It is also averred in the answer and admitted in the cause, that the record of the suit of *Fink* v. *Daniel Zane's Executors et al.*, except the orders and decrees on the order-book, has been lost and cannot be produced. The appellee, Mrs. McSwords, it will be remembered was no party to this cause and, of course, the record if produced could not be used as evidence for or against her. The original papers, evidencing many of the debts of the testator which were paid by the sale of the appellants' land, had been sued on at law and transcripts of the judgments there recovered only were filed and lost in the chancery suit. The originals filed with the law papers were not lost but were produced and filed in this cause.

It is true the debts to be investigated in this suit existed prior to 1867, when the appellants' cause of action arose, but as those debts were scrutinized by the executors, who had a direct interest aside from their duty as executors to defeat them if unjust or illegal, it is not probable the appellee if she had been called upon in the suit of *Fink* v. *Zane's Executors et al.*, could have made any more successful defence than that made by the appellants. There is no charge or pretense that there was any collusion or fraud in that suit or attempt to show that any debt allowed or paid was not justly due or could have been defeated. It is shown, however, that some of the decrees in that suit were entered by the consent of the appellants; but that is not an unusual practice in creditors' suits when the executors are satisfied that the debts are just and can be or, perhaps, have been legally proven, they may very properly consent to waive mere legal formalities, and thus often save costs and avoid prolonged litigation which could not alter the result in any respect. Certainly the consent of executors in such cases, in the absence of any proof or suspicious circumstances, does not raise even a presumption of collusion, illegality or neglect of their duty. But these orders and decrees, as before stated, are not evidence in this cause, except so far as they prove the fact that such a suit was brought and the fact that the land of the appellants was sold by the creditors of Daniel Zane,

deceased, to pay what were alleged to be debts due from his estate. The appellants, by the recitals in said orders and decrees, are not relieved from establishing the justice and legality of the said debts. This they have done in some instances by producing the original evidences of debt and proving their execution by the testor. I do not, therefore, upon a careful consideration of all the facts and circumstances in this cause, think that it is one of those cases in which a court of equity would be warranted in denying relief either on account of the *laches* of the appellants or the staleness of their demand.

It is alleged in the bill of the appellants that, until the decision of this Court in *Irwin* v. *Zane*, rendered in November 1879, 15 W. Va. 646, they were of opinion that the reversion now sought to be subjected, did not pass under the third clause of the will of Daniel Zane, deceased, as a fund devised for the payment of the testator's debts, and they allege this misapprehension as a ground for their delay in bringing this suit until after that decision. I do not regard this as any valid excuse and have given it no weight in the conclusion I have reached. While ignorance of law does not prevent the bar of the statute of limitations, which depends upon law, and not good conscience, I do not understand that the same rule applies as regards the lapse of time to a purely equitable demand in a court of equity. In this Court moral as well as legal considerations may be regarded. But the reason for ignoring the excuse of the appellants in this cause is, because assuming their opinion of the law was correct and that said reversion did not pass under the third clause of the will, then it was not disposed of by the will and necessarily as "real estate descended to the heirs," was applicable for the payment of debts in exoneration of the real estate devised to the appellants. So this pretension has neither a legal nor a moral basis and has been, therefore, wholly disregarded.

It is suggested by the appellants' counsel that upon a reversal of the decree of the circuit court, this Court will enter such decree as that court should have entered. Such is the usual course, but in this cause to do so, would require this Court to perform the duties of a commissioner of ac-

counts to ascertain and calculate the debts and their amounts to be incorporated in the decree, a task which this Court does believe the law contemplated it should undertake.

For the reasons aforesaid I am of opinion that the decree of the circuit court entered January 30, 1884, should be reversed with costs to the appellants against the appellee, Indiana McSwords, and that the cause be remanded to said circuit court to ascertain the amount for which the appellants are entitled to have decreed in their favor, by reference to a commissioner or otherwise as to said court may seem proper, in accordance with the principles announced in this opinion, and to enter a decree for such sum, and for further proceedings.

REVERSED.    REMANDED.