Margaret W. Sweeney *v.* Security Trust Company *et al.*

(No. 7536)

Submitted April 10, 1935. Decided June 4, 1935.

Kenna, Judge, *dissenting.*

*Lee, Blessing & Steed, Lively, Lively & Stambaugh* and *Brown, Jackson & Knight,* for appellant.

*James Paull, Jr., Ewing & McGinley, Jay T. McCamic* and *McCamic & Clarke,* for appellees Security Trust Company and W. B. Irvine.

*Francis Woodward Young* and *R. S. Spilman, Sr.,* for appellees Mary Irwin Young and others.

*Edmund Lee Jones,* for appellees A. H. Woodward and others.

Woods, Judge:

This suit involves the disposition of unexpended income

from a trust estate, established by a will which did not specifically mention such surplus.

Caroline C. Hughes died in 1908 devising all of her property to her executor as trustee to be held in trust "for the sole, separate and exclusive use and benefit of Margaret W. Hervey," granddaughter of the testatrix, and "upon the further trusts and with the further provisions" that the executor should manage the property and if need be re-invest the same as to produce an income, and "devote and apply such income, or so much thereof as may be needed to the maintenance and support of Margaret W. Hervey during her life." And, further, that in case Margaret arrived at the age of twenty-one years and married, and the net income "of the property held in trust" under the will should fall below two thousand dollars in any year, the trustee was authorized to give her "a part of the principal, if the same be available and he deem it wise to do so" with the further condition that no more than two thousand dollars of the principal should be thus donated in any year. The testatrix directed that at Margaret's death, "all of the property held in trust under the will" should go to her issue, if any, and if she died without issue, to the brothers and sisters of the testatrix, etc. And, finally, the testatrix declared that "under no circumstances" should the father of Margaret be placed in charge of the funds provided under the will.

The estate of Mrs. Hughes (after paying her obligations) was appraised at $483,795.34. Margaret was fourteen years old at the death of her grandmother. During Margaret's minority, her wants were not extravagant, and there was a large accumulation of surplus income. She became of age in 1915, and since then has been paid annually from the income as follows: $5,751.99 in 1916, $5,812.68 in 1917, $10,179.23 in 1918, $12,197.79 in 1919, $15,000.00 a year (under an order of the court) from 1920 to 1924, inclusive, and $30,000.00 a year (under another order of the court) from 1925 to 1930, inclusive. The accumulation of income continued after her majority despite the large appropriations to her. The estate was appraised on December 31, 1930, at $1,445,864.73, showing an accretion from the income of $962,069.39.

The bill prayed (1) for a construction of the will; (2) that plaintiff be decreed the entire net income derived from the trust; and (3) that the trustees be directed to pay unto plaintiff all of the unexpended accumulations of the income.

Is the beneficiary entitled, under the will, to all of the income from the trust? The defendants say not, basing their position on the theory that the will created two trusts—one of the corpus, and the other, accumulated income. They further contend that the plaintiff is limited to such part of the income as may be necessary for her maintenance and support.

The court, having formerly sustained a demurrer to the bill in so far as the same claims an absolute right to all the income of the trust estate, upon consideration of the pleadings (including answers), and the fact that the plaintiff did not desire to amend, nor to prosecute her suit as a mere application for increased allowance, ordered that the bill be, and the same was, dismissed at cost of plaintiff.

A fundamental principle of construction imbedded in the law of this State is that every part of a will shall be given effect if possible, and that no sentence and no word shall be discarded if consistent with a reasonable interpretation. In the instant case, the beneficiary in the trust is also the sole lineal descendant and heir, and, as such, entitled to any property not disposed of by the will. An heir at law as such never takes by act or intention of the testator. His right is independent of the will; and, being favored in law, there should not be a constrained construction to work a disherison. Where there is a doubt, a construction favorable to the heir will be adopted. *Barker* v. *Haner,* 111 W. Va. 237, 161 S. E. 34; *Bartlett* v. *Patton,* 33 W. Va. 79, 10 S. E. 21; *Graham* v. *Graham,* 23 W. Va. 36.

The testatrix in the instant case, in the paragraph following the introductory portion of the will, placed all her property, none excluded, in the hands of the executor in trust for the sole, separate and exclusive use and benefit of the plaintiff, and then directed that the same be managed so as to produce an income to be passed on to the plaintiff during her lifetime. Defendants contend that the clause directing the administra-

tion of the trust limits the *cestui's* interest to that portion of the income necessary for her maintenance and support, and in support thereof call attention to the following paragraph of the will which authorized an encroachment upon the principal in certain instances. However, we cannot subscribe to that line of reasoning. The trust set up in the paragraph under discussion is complete in the sense that it passes both the legal and equitable title. The trustee is more than a mere depository. The several parts of the paragraph are so interconnecting and interdependent as to constitute but one trust. *Thompson* v. *Whittaker Iron Co.*, 41 W. Va. 574, 23 S. E. 795; *Carney* v. *Cain*, 40 W. Va. 758, 23 S. E. 650. Such trust was for the ''sole, separate and exclusive use'' of the plaintiff. The legal title placed in the executor or trustee, invested the plaintiff with the absolute right to have the income therefrom devoted to her ''sole, separate and exclusive use.'' *Totten* v. *Dawson*, 104 W. Va. 274, 139 S. E. 858. Such intention is quite apparent from the will as a whole. The testatrix was interested primarily in her infant granddaughter, who was only five years of age at the time of the execution of the will. This granddaughter was her only lineal descendant. She created the trust for the granddaughter alone. And should the income prove to be insufficient in any one year, the trustee might encroach upon a certain portion of the principal which was being held in trust to yield the income.

The only property held in trust for the purposes revealed in the will is the original corpus or principal. This is evidenced by the word ''property'' used in every other paragraph. In each instance we believe the word ''property'' must be given the same meaning, namely, the corpus or principal to which the trustee took title under the first depository clause in the will. The authorities are agreed in the Virginias that when the same word occurs more than once in the same will, it ordinarily is to be understood in the same sense. *Tomlinson* v. *Nickell*, 24 W. Va. 148; *Fairclaim* v. *Guthrie*, 1 Call. (Va.) 7; *Gray* v. *Francis*, 139 Va. 350, 124 S. E. 446.

We do not observe one word in the will which indicates an intention to accumulate income, nor from which such intention may be inferred. According, then, to all the rules of interpre-

tation, the authorities are united in saying that the language cannot be supplied for such intention. In the recent case of *Barker* v. *Haner, supra,* we held that: "When a testator in the disposal of his property overlooks a particular event or matter, which, had it occurred to him, he would have guarded against, the court will not employ or insert the necessary clause for the purpose of supplying the omission." In the case of *Aldrich* v. *Aldrich,* 43 R. I. 179, 110 Atl. 626, it was affirmed that "where property is left in trust by a will, the courts will not infer an intention to accumulate income in the absence of language indicating such an intention." So, in the instant case, the court must assume, in the absence of words showing an intention to accumulate income for the benefit of eventual contingent remaindermen, that testatrix would have used the necessary words to express such intention had it been her purpose. The foregoing cases and the findings and rulings thereon furnish rules of construction applicable to the will in the instant case, and we hold that the income from the trust estate, except as hereinafter determined, should go to the plaintiff.

Suffice it to say that the only reasonable construction that can be put upon the will under consideration, when read in the light of the law governing the construction of wills, as it regards absolute gifts, intestacy, or in any other light, is that the plaintiff herein is entitled to the entire income, except as hereinafter indicated, from the estate either as the beneficiary under the will, or as the only lineal descendant and heir of her foster mother.

Let us look at the amount that Margaret W. Sweeney has already received from the estate in suits brought to receive the income for her benefit. She received this income and used it as her own without objection or appeal. It was not until the present suit was instituted that she took the position that she was entitled to all of the income.

In August, 1920, the Security Company and its co-trustee, W. B. Irvine, brought suit against Mrs. Sweeney, then Margaret Hervey. The bill stated the allowances made to Margaret from 1915 to 1919, inclusive; and that owing to the increased cost of living, the sum of $1,250.00 per month was

necessary for the proper maintenance and support of Margaret, but before paying the same, the trustees desired the aid and authority of a court of equity, and asked that the will of Mrs. Hughes be construed. A decree was entered on September 22, 1920, stating that the case came on to be heard upon the bill and exhibits, upon process issued and served on Miss Hervey (and the other defendants), upon the bill taken for confessed as to all of the defendants, upon the testimony of the witnesses in open court, and upon the records and accounts of the trustees. In consideration of all of which, the court confirmed the payments theretofore made to Margaret Hervey and decreed that the payment at the rate of $1,250.00 per month to Margaret would be reasonable and just and authorized and directed the trustees to pay that amount until the further order of the court "as and for the amount she is entitled to under the provisions of the trust herein."

Another suit was brought in August, 1924, in which like allegations were made except that the bill alleged that Margaret was demanding of the trustees an increase in her monthly allowance, to-wit, an allowance of $2,500.00 per month. A decree was entered in this second suit in January, 1925, decreeing that the trustees pay to Margaret from the income of the trust estate in their hands $2,500.00 per month, until the further order of the court "as and for the amount to which she, the said Margaret W. Hervey, is entitled under said will."

That waiver and estoppel apply to the rights of a beneficiary to enforce a trust are shown by reference to 26 R. C. L., page 1347. On the doctrine of *res adjudicata* generally, see 34 C. J., pages 745, 818, 868 and 873.

So, we are of opinion that these sums that the plaintiff received in those suits brought in the circuit court for allowances estop her from recovering the same here under her attempts to recover the entire amount of the rentals from the estate. She received said sums in recognition of the theory that she was entitled to only so much of the income as the trustees, acting under authority of the circuit court, should pay her. Therefore, we are impressed that she should not receive the whole income save from the time she demanded it.

Prior to the making of such demand, a different status existed through her cooperation. Her support and maintenance were amply. provided for during her minority and through the subsequent years down to the institution of this suit. While in this suit we are resolving. all doubts in her favor, we can nevertheless not approve her change of attitude with respect to the income for past years. Having permitted it to become part of the principal for re-investment, she should not in good conscience now be permitted to disturb that status. Otherwise, we hold that she is entitled to the entire net income derived from the trust. We interpret the will to hold the foregoing.

The decree of the circuit court is therefore reversed, and the cause remanded for the entry of an order of. distribution in accordance with this opinion.

*Reversed; remanded with directions.*

On Rehearing:

It is urged on rehearing that our decision goes too far; that we should have considered only the sufficiency of the bill and not have decided the case on *its* merits.

Re-examination of the record convinces us that the point is not well taken. The action of the trial court on the demurrer to the bill was certified to this Court for review. We declined to docket the certification because we did not then perceive probability of error. When the case went back to the circuit court, the defendants answered. Such course was deemed necessary because the demurrer to the bill had been sustained only in part. Later, the cause came on to be heard before the chancellor upon all papers and pleadings, theretofore filed therein and upon former orders and decrees. Decree of dismissal followed. From that decree, this appeal was taken.

From the background stated, we consider that the whole record is before us on review, and that the present inquiry is therefore not limited merely to the sufficiency of the bill. The fact of the two prior suits mentioned in the opinion is averred in both bill and answer. Copies of the process, bills and decrees in said two suits are filed as exhibits with the answer. So that the import of the two suits was fairly before the

chancellor and is now before this Court. *Atlantic Bitulithic Co.* v. *Town of Edgewood,* 114 W. Va. 243, 171 S. E. 754.

Our refusal to docket the certification cannot be taken as an irrevocable expression of opinion that what had then been done by the circuit court must stand. Under the statute, upon certification, if we are of opinion that there has been error in the action of a trial court with respect to pleadings, we docket the cause for review. If we are of opinion that there was no error in such ruling, we decline to docket. Generally speaking, our declination so to docket may properly be taken as an affirmance of the trial court's ruling, but it would be wholly unjust to litigants to ascribe to such action on our part the binding effect of a final adjudication. If, as in the case at bar, upon later review of the whole record, upon full argument, we reach the conclusion that there was initial error in the proceedings in the trial court, the ends of justice require that we have authority to say so, and that our action on preliminary examination of the question of pleading be not held to preclude such later re-examination.

HATCHER, JUDGE, concurring:

Primarily I should have sustained the circuit court. The will in question is *sui juris;* but the following cases, relating to wills materially resembling this one, support the circuit court: *Thurber* v. *Thurber,* 43 R. I. 504, 112 A. 209; *Minot* v. *Tappan,* 127 Mass. 333, 336; *Bridgeport-City Tr. Co.* v. *Beach,* 119 Conn. 131, 174 Atl. 308. See also *Brown, Tr.* v. *Wright,* 168 Mass. 506, 47 N. E. 413; *Hurford* v. *Haines,* 67 Md. 240, 244, 9 A. 540; *Irwin* v. *Zane,* 15 W. Va. 646. None of my brethren would agree with my construction of the will itself. So, in a spirit of deference, I concur in the majority opinion.

KENNA, JUDGE, dissenting:

I cannot agree that the doctrine of estoppel should be decisive of the right of Margaret W. Hervey under the will of Caroline C. Hughes. It seems to me that because no party in interest changed his position in relation to the subject matter of the suit, no one was misled, and no one was

prejudiced, on account of the conduct of Margaret W. Hervey, that the elements of estoppel are not present.

There is more difficulty, to my mind, presented by the question of *res adjudicata* based upon the decrees in the two former proceedings in the circuit court of Ohio County in which the will of Caroline C. Hughes was before that court. The bill of complaint filed by the trustee in the second of these proceedings contains a prayer that it may be treated as an amended and supplemental bill to the bill of complaint filed in the first proceeding, seeking changed and additional relief pursuant to the provisions of the first decree. This bill of complaint was taken for confessed as to Margaret W. Hervey. The circumstances, it seems to me, indicate quite clearly that the trustees, in filing their bill of complaint in the second proceeding, did not treat the first decree as *res adjudicata*. Clearly, they sought to establish the second proceeding as a continuation of the first. In fact, the prayer of their second bill is that the two proceedings be consolidated. If the first proceeding was not *res adjudicata* (and certainly, in the light of the prayer of the second bill, it does not lie in the mouths of the trustees now to say that it was) then it is difficult to regard the second proceeding as being *res adjudicata*. The second bill of complaint alleges that Margaret W. Hervey has demanded of the trustees the payment of $2,500.00 monthly for her maintenance and support and "otherwise as she may be entitled under the will aforesaid." The bill further alleges that the trustees are in doubt as to whether they can make such payment strictly as payments for maintenance and support under the provisions of the will "or *in part at least* under the terms of said will providing for the holding of the said trust estate for the sole, separate and exclusive use and benefit of said Margaret W. Hervey." (Italics supplied.) The decree that was entered was based upon this bill of complaint taken for confessed. That decree approved the monthly payment of $2,500.00 to Margaret W. Hervey, but it did not adjudicate that that sum was being paid *for maintenance and support* or whether it was being paid for that purpose *and* "in part at least under the terms of said will providing for the holding of the trust estate for

the sole, separate and exclusive use and benefit of the said Margaret W. Hervey." It said only that the payment of $2,500.00 monthly was "as and for the amount to which she the said Margaret W. Hervey is entitled under said will." The opinion of the trial court filed in this case, rendered by the same judge who had entered the last of the two former decrees, expressly declines to treat either the first or the second decree as *res adjudicata*. Stripped of technicality, which, for the reasons stated, I do not regard as rendering either of the former decrees conclusive, and viewed in the light of all of the surrounding circumstances, to my mind the two proceedings prior to this case brought in the circuit court of Ohio County had for their purpose nothing more than seeking the protection of a decree or decrees of a court of chancery to the end that the trustees, in the settlement of their accounts, should incur no obligation on account of the payments that they made to Margaret W. Hervey. Certainly neither of the former decrees expressly settles the construction of the will of Caroline C. Hughes in the manner that would be expected in decrees entered in proceedings brought for the purpose of finally and fully interpreting the provisions of a will. Both are indefinite as to the basis upon which they approve the allowance to Margaret W. Hervey, in each case in exact accordance with the prayer of the bill. To regard either of the former decrees as settling the interpretation of the will of Caroline C. Hughes, would, I think, be but looking to one ambiguous paper to settle the meaning of another. The trial chancellor did not so regard either of them. Therefore, although the question is troublesome, I am of the opinion that neither of the former decrees is to be regarded as *res adjudicata* of the right of Margaret W. Hervey in this proceeding.

Being of the belief that neither the doctrine of estoppel nor the principles of *res adjudicata*, properly applied, bar Margaret W. Hervey from asserting, in this proceeding, her right under the will of Caroline C. Hughes, I conclude that the correct interpretation of the will of Caroline C. Hughes, by which the intention of the testatrix should be arrived at and enforced, should be the basis of the decree to be entered.