Joseph R. CURL, Executor and Trustee under the Last Will and Testament of Elizabeth Erskine, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1031–W.

United States District Court
N. D. West Virginia,
at Wheeling.
May 25, 1964.

388

W. F. Keefer, Wheeling, W. Va., for plaintiff.

Robert I. White, Atty., Dept. of Justice, John H. Kamlowsky, Acting U. S. Atty. (Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, George A. Hrdlicka and Herbert Odell, Attys., Dept. of Justice, on the brief), for defendant.

PAUL, Chief Judge.

The plaintiff sues for refund of alleged overpayments of income taxes for the fiscal years ended July 28, 1952, 1953, 1955, 1956, 1957 and 1958. The alleged overpayments resulted from the disallowance of deductions claimed for income permanently set aside for qualified charitable institutions, under 26 U.S.C. 1958 Ed. § 642.

The issues were submitted May 15, 1964, upon the respective motions of both parties for summary judgment, which motions were supported by stipulations, affidavits, answers to interrogatories, and schedules and exhibits in connection therewith.

### FACTUAL BACKGROUND

Elizabeth Erskine (hereinafter called the testatrix) died June 9, 1943, leaving a Will, the pertinent part of which is a Codicil executed March 23, 1941. The Codicil appointed Joseph R. Curl Trustee of the Trust established by paragraph "Third", in the following language:

"Third: To keep separate and intact, so far as possible, all the stocks I may own in corporations (less what may be necessary to pay, should my other personal estate prove insufficient therefor, the matters set forth in the first trust provision of this item,) and to hold the said stocks and all other estate, both personal and real, that is not needed for other purposes, for the support and maintenance of my niece, Dora Clohan Gard, of Port Huron, Michigan, for and during the period of her life, and to pay the income therefrom to my said niece in such amounts, and at such times, as my trustee shall, in his absolute discretion, think proper. Should the income of such stocks and property be insuffi-

cient to pay for the support and maintenance of my said niece an aggregate of five hundred dollars ($500.00) quarterly, and she, in the judgment and discretion of said trustee, shall be in need of additional financial assistance, then I authorize and empower said trustee to use so much of the principal or corpus of said trust property, either by sale thereof, by borrowing thereon, or otherwise, as may be necessary to enable said trustee to furnish each quarter to my said niece, for her support and maintenance, an aggregate of five hundred dollars ($500.-00), *that being the maximum amount that I wish expended each quarter for the support and maintenance of my said niece.*" (Emphasis supplied).

The Will provided for liquidation of the trust assets upon the death of Dora Gard and distribution among named, qualified, charities.

The Trust, as set up after testatrix's death, was of the principal value of approximately $60,000.00. For each year, after the first year, and until Dora Gard's death January 4, 1963, during the pendency of this suit, the Trustee paid to Dora Gard, from income, amounts aggregating $2,000.00. The undistributed portions of the net income were, from time to time, invested and reinvested. Prior to the tax year 1952, the Trustee claimed no deduction in his tax returns for retained or accumulated income. Mrs. Gard, during her life, made no claim of her entitlement to additional income distributions, and no such claim has been made since her death by her personal representatives.

## THE ISSUES AND THEIR DISPOSITION

At the outset it must be recognized that the principal question here involved is one of Will construction. The Government contends for a construction which would entitle Mrs. Gard to the entire income from the Trust, and which would confine the applicability of the underscored words in the quoted portion of the Will to limit the total payments to $2,000.00 only during a year in which the income was less than that amount and in which corpus would have to be invaded to make up the amount. The plaintiff, on the other hand, contends that his discretion was limited, in all events, to payments not exceeding the annual sum of $2,000.00 from all sources, and that he was required to accumulate the net income in excess of that amount.

Standing alone, the first sentence of the two-sentence Will provision would both justify and require the finding that Mrs. Gard was entitled to the entire net income. However, the Will must be read as a whole, and the second sentence clearly indicates that the testatrix intended an annuity of not more than $2,-000.00. The underscored clause in the quotation from the Will was entirely unnecessary if we are to follow the Government's contention that its applicability be limited to corpus invasion. In the first sentence the testatrix makes clear her intention to provide for the "support and maintenance of my niece, Dora Clohan Gard", and in the second sentence, particularly the last clause thereof, she defines what she means by "support and maintenance". To attribute a more restricted meaning to that last clause would be to add words of limitation which are not in the Will and which seem contrary to its plain meaning.

The Government contends that testatrix's niece was the principal object of her concern; that she evidenced no overriding purpose to accumulate income for the charitable remainders; and that the Will should be construed most favorably to accomplish testatrix's intention in that regard. With this contention we can agree, but it does not necessarily follow that we should attribute to the testatrix the intention that all of the income should be distributed currently. To the contrary, it is perfectly consistent with the testatrix's tender concern for her niece's welfare that distributions from all sources should be limited to the maxima she provided. Granted a pri-

mary purpose to provide (with as much security as she could) for her niece's welfare during life, a limitation on distributions in prosperous years as well as lean would seem consistent with the purpose. In retrospect, one can see that her plan overprotected on the side of security, and that the plan failed to make adequate provisions for increases in the cost of living. Remembering, however, that the testatrix knew that her estate was a limited one; that her neice, with an invalid husband, needed security more than affluence; that the testatrix had gone through the depression of the 30's, and that in 1941 (and 1943) the country was at war and that the economy faced uncertain prospects, we are not permitted to say, out of the wisdom of hindsight, that her precautions were unnecessary and unwise as a method for accomplishing her primary purpose, and adjust her Will accordingly.

The Government places great reliance upon the opinion of the West Virginia Supreme Court of Appeals in Sweeney v. Security Trust Co., et al., 116 W.Va. 344, 180 S.E. 897, as being on all fours with this case and compelling, under West Virginia law, a finding that Dora Gard was entitled to all of the income. Sweeney differs materially from this case both in the Will language and the surrounding circumstances. In Sweeney the court dealt with a Will which established a Trust expressly declared for the "sole, separate and exclusive use" of the life beneficiary, who was the granddaughter and foster daughter of the testatrix. The remainder interest was in the life tenant's "issue", and on failure of issue, to the testatrix's brothers and sisters, etc. Among the administrative provisions, the Will empowered the trustees to "(d)evote and apply such income, or so much thereof as may be needed to the maintenance and support of (the life tenant) during her life." The question was, under this language and in the circumstances there involved, whether the life tenant was entitled to all of the income in a very large estate, or whether she was entitled to only so much as the

trustees, in their discretion, felt she needed; permitting the trustees to accumulate income for the benefit of contingent remaindermen. The language bears some similarity to that employed in the first sentence in the quoted Will provision with which we are concerned, but the Will in Sweeney had no language remotely resembling the underscored clause in the quoted section of this Will.

■ If we were to characterize the Will here as ambiguous, the resolution of the ambiguity in favor of the construction here announced can be aided by the application of a rule of "practical construction", long recognized even in tax cases. For a period of twenty years the Trustee, who is the attorney who had prepared Mrs. Erskine's Will, had acted on his interpretation that the maximum allowance to Dora Gard was $2,000.00 annually, and accumulated the surplus, and Mrs. Gard, at least tacitly, acquiesced. As stated in 6 Mertens Law of Federal Income Taxation, Section 36.29, "In case of ambiguity, not only the trust instrument, but also what has happened in relation thereto, may be resorted to. The acts of the persons most interested in its correct enforcement, as well as the bare language of the trust instrument, are relevant. A long standing interpretation of a trust by the interested parties should be given great consideration and will not be lightly set aside. The action of the parties under the trust is an important aid." The notes aptly cite a number of Tax Court and Board of Tax Appeals cases.

■ As a second and subsidiary issue, the Government contends that, even if the plaintiff's version of the Will meaning is accepted, the deductions were properly denied because, at the end of each of the tax years in suit, it could not be determined that the retained and accumulated income for that tax year was permanently set aside for the remainder charities. The point is that the possibility existed that, in some future year, the net income might be insufficient to pay the annuity of $2,000.00, in which

case the trustee would be obliged to encroach upon the principal, including the invested accumulated income, and thus divert such income from the charities. The Government's counsel concede that the point has no validity if the possibility of invasion of the income accumulated during the crucial tax year is so remote as to be negligible.

The point does not seem to be well taken. As the Trust was administered, the invested income became a part of corpus, and, unless the corpus was invaded to the extent that not even the value of the accumulated and invested income remained, the charities will have benefitted by the accumulations to the full extent thereof.

What possibility existed at the end of each tax year in suit that future invasions of corpus for the purpose of paying the annuity would exhaust the corpus to the extent that not even the amounts contributed by the income accumulations for that year would be left? While the record does not disclose the market value of the trust investments at the end of each tax year in suit, it does show that this trust, which started out with property worth $60,000.00, had property in excess of $240,000.00 at the end of 1962. It further shows that, at the end of the tax year 1952, the Trustee had had nearly nine years' experience, in which the net income, even after paying income taxes, had exceeded the annuity requirements by nearly one hundred percent, and in later years, the experience grew progressively more favorable. The life expectancy of the life tenant at the end of 1953 was 10.94 years, and, even if the trust investments thereafter earned no income at all, the annuity liability would require a cushion of only $22,000.00. The record also shows that the trust investments were consistently maintained in seasoned listed securities.

In view of the showing, this court must find that the possibility of diversion from the charities of the benefit of the accumulated income during the tax years in suit was, at the end of those years, respectively, so remote as to be negligible.

Plaintiff's motion for summary judgment is granted and the motion of the defendant denied. Judgment order shall be entered, when settled, as promptly as reasonably possible.