JOHN B. ATKINS, JOSEPH FOSTER ATKINS, ALMA ATKINS, LUCILE ATKINS HAMILTON AND MIRIAM ATKINS DYKES, AS HEIRS OF THE ESTATE OF JOHN B. ATKINS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALMA FOSTER ATKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3377, 15485. Promulgated November 18, 1927.

*Walter E. Barton, Esq.*, and *J. D. Wilkinson, Esq.*, for the petitioners.

*A. R. Marrs, Esq.*, for the respondent.

OPINION.

ARUNDELL: Whatever doubt may have existed as to the taxability of a profit made by the exchange of property for property under the circumstances herein has been removed by the decisions in the cases of *Marr* v. *United States*, 268 U. S. 536; *Cullinan* v. *Walker*, 262 U. S. 134; *Appeal of Burge*, 4 B. T. A. 732; *Appeal of Minal E. Young, Executor*, 6 B. T. A. 472; and *Reibert* v. *Commissioner*, 7 B. T. A. 1198. The test seems to be whether the taxpayer received in exchange something different from what he theretofore had and there is no doubt that the bonds received by petitioner from the New York corporation were securities of a radically different character from shares of stock in the Louisiana corporation and from his ownership of the Christmas process and a one-half interest in the Noel lease. We have no difficulty in reaching the conclusion that a transaction such as took place here may give rise to taxable income.

But petitioners contend that the *Marr* and *Cullinan* cases, *supra*, have little application to the present case as they were decided under the earlier revenue acts, which contained no provision with reference to exchange of property for property or securities of one corporation for those of another organized to take over the old. There might be some merit in the contention made if income under the 1918 Act were a different thing from the income referred to in, and taxed by, the earlier Acts. Such is not the case, at least in so far as section 202(b) is concerned. *Bourn* v. *McLaughlin*, 19 Fed. (2d) 148; 6 Am. Fed. Tax Rep. 6681. In that case the court, after quoting the definition of income from *Eisner* v. *Macomber*, 252 U. S. 189, 207, says:

Gains arising out of dealings in property are not taxable unless they fall within the above definition of income. This is true whether the statute under which the tax is levied is that of 1916 or 1926. The explicit recognition of the principle that income is not realized unless it is received in a form which has an equivalence in cash, a realizable market value, found in the 1918 and subsequent statutes is not a restriction of the incidence of the income tax. It is merely an express statement of a principle inherent in the nature of income as recognized in *Eisner* v. *Macomber*, *supra*, in the statement that income must be "a gain, a profit, something of exchangeable value, proceeding from the property."

Petitioners, however, raise the very fundamental question that in the case of one reporting on a cash receipts and disbursements basis promises to pay do not constitute income and as the bonds were mere promises to pay on the part of the New York corporation, decedent was in receipt of no taxable income until those promises were in fact fulfilled and cash payment was received. So far as we have been able to ascertain, a promise to pay evidenced solely by an open account has never been regarded as income to one reporting on a cash basis by the Bureau of Internal Revenue. Certainly this is true in the absence of any showing that the amount was immediately available to the taxpayer. The Board has further held that income was not constructively received by the mailing of a check, *Louis Titus*, 2 B. T. A. 754, or the entry on the books of a corporation of the amount of salary due when in fact money was not available to make payment, *A. L. Englander*, 1 B. T. A. 760. On the contrary, we have held notes to be income even though the taxpayer was on a cash basis. *J. S. Cullinan*, 5 B. T. A. 996.

Petitioners place great reliance on the case of *United States* v. *Schillinger*, 14 Blatch. 71; Federal Case No. 16228, in which it is held in part:

In the absence of any special provision of law to the contrary, income must be taken to mean money and not the expectation of receiving it or the right to receive it at a future time.

That decision has been cited in numerous cases. See *Rensselaer & Saratoga Railroad Co.* v. *Irwin*, 249 Fed. 726 (dissenting opinion); *United States* v. *Christine Oil & Gas Co.*, 269 Fed. 458; *Pitney* v. *Duffy*, 291 Fed. 621; *In re Sheiman*, 14 Fed (2d) 323. It will be noted from the quotation taken from the *Schillinger* case that the court predicates its ruling on " the absence of any special provision of law." Section 202 of the Revenue Act of 1918 provides a method of taxing gains resulting from the exchange of property. That provision makes no distinction between taxpayers on the cash basis and those on the accrual basis, but lays down the rule that:

When property is exchanged for other property, the property received in exchange shall, for the purpose of determining gain or loss, be treated as the equivalent of cash to the amount of its fair market value, if any.

What then is the dividing line? While no categorical answer is available and the facts in each case must be closely scrutinized, we believe that in the case of one reporting income on the receipts and disbursements basis only cash or its equivalent constitutes income. Does a bond have a fair market value; has it a readily realizable market value? If it has, we must presume a market for the security wherein its fair market value is obtainable. A Government bond is, in its essential character, no different from any other bond, for it is merely the Government's promise to pay, but the market is so broad that Government bonds may be said to be equivalent to cash, for to the extent of their fair market value cash may be readily realized for them. Bonds and shares of stock of many of the leading corporations of the country have a ready market whereby cash may be realized for them at any time. On the contrary, shares of stock and other securities in closely held corporations frequently have no fair market value for they are unknown and there is in effect no market for them. Article 1563 of Regulations 45, promulgated under the 1918 Act, giving effect to section 202, recognizes this principle. It is there stated:

Gain or loss arising from the acquisition and subsequent disposition of property, is realized when as the result of a transaction between the owner and another person the property is converted into cash or into property (a) that is essentially different from the property disposed of, and (b) that has a market value. In other words, both (a) a change in substance and not merely in form, and (b) a change into the equivalent of cash, are required to complete or close a transaction from which income may be realized. By way of illustration, if a man owning ten shares of listed stock exchanges his stock certificate for a voting trust certificate, no income is realized, because the conversion is merely in form; or if he exchanges his stock for stock in a small, closely held corporation, no income is realized if the new stock has no market value, although the conversion is more than formal; but if he exchanges his stock for a Liberty bond, income may be realized, because the conversion is into independent property having a market value.

The difficulty is not in announcing the underlying theory, but in its application, and in determining whether a promise to pay is the equivalent of cash we must examine into all the facts and circumstances and if the promise to pay has a readily realizable market value, i. e., so that cash may be readily substituted for it, then it is, in the eyes of the law, cash income and returnable as such. The evidence here establishes that the bonds received by petitioner in the New York corporation had a fair market value and that the fair market value was 64.43 cents on the dollar.

Petitioners argue in the alternative that the bonds received by Atkins were received as a result of a reorganization, and being of no greater par value than the property given in exchange, are not taxable under section 202(b) of the Revenue Act of 1918, which provides in part:

* * * When in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged.

The facts, briefly, are that the New York corporation was organized for the purpose of taking over the assets of the Louisiana company. Atkins turned in his Louisiana company stock, his interest in the Noel lease, and his right to receive royalties under the Christman process, receiving therefor bonds of the New York company. Clearly, his exchange of the Noel lease and Christman process for the New York company bonds does not come within section 202(b). As to his exchange of stock for bonds, we think that transaction does come within the statutory provision. *R. D. Musser*, 2 B. T. A. 1031, 1041. As the aggregate par value of the bonds received by Atkins was less than that of the stock exchanged therefor, the transaction, under section 202(b) resulted in neither taxable gain nor deductible loss.

In determining the deficiency for 1919 the Commissioner held that Atkins had realized a profit of $65,000 on the exchange of the Noel lease and a profit of $130,000 on the exchange of the Christman process for New York company bonds. In so doing he found that the bonds had a fair market value of 65 cents on the dollar. The petitioners contend that such segregation should not be made as the transfer of the stock and other properties of Atkins for cash and bonds was all one transaction; that bonds were issued on the basis of $35 per share of stock, making $291,480 face value of bonds issued to Atkins for his stock, and that the balance, $133,440, should be attributed to the Noel lease and Christman process. The evidence does not support those contentions. In the general letters addressed

to the stockholders the basis of exchange was outlined on the basis of $35 per share of stock, but the telegrams between Smith and Atkins show clearly that Atkins was to come in to the reorganization on a basis different from that of the others. It is true that the books of the Fidelity Trust Co. show bonds issued to Atkins at the rate of $35 per share of stock, but we can not but believe that this was done merely for bookkeeping purposes. An examination of the exchange of telegrams between Smith and Atkins as set forth in the findings of fact shows that from the beginning of the negotiations the interests who were financing the reorganization refused to give Atkins the same amount for his stock as was to be given other stockholders. Throughout the negotiations Atkins offered his stock, the Noel lease, and the Christman process as separate items and they were so accepted by Clark & Co. The bonds issued by the New York corporation had a market value of 64.43 cents on the dollar. The market value of the $100,000 in bonds received by Atkins for his interest in the Noel lease was, therefore, $64,430, to which should be added the sum of $85,000 received in cash, and the depreciated cost of $74,828.95 should be deducted. The $200,000 in bonds received for the Christman process had a market value of $128,860, all of which was taxable income as the process cost Atkins nothing.

In 1919 the investment of Atkins in the Atkins-Cooney lease amounted to $9,184.29. For each of the years 1919 and 1920 he claimed as deductions for depreciation amounts approximating 20 per cent of the investment. We are unable to determine from the evidence what portion of the investment represented the cost of either the lease or equipment, and we must, therefore, sustain the respondent's disallowance of the amounts claimed. Error in respect of the disallowance of these items was alleged in each of the appeals and our holding applies to each.

In each of the petitions complaint is made against the disallowance of $472.31 said to be taxes paid by Atkins. In the Atkins Estate case claim is also made for a deduction of $4,126.23 said to be taxes paid in the year 1921. There was testimony to the effect that some taxes were paid, but the evidence was so vague and unsatisfactory that we are unable to determine the amount actually paid in either year, and, accordingly, we can find no error in the respondent's disallowance of the amounts claimed.

No evidence was offered concerning the respondent's disallowance of $478 alleged in each of the petitions to represent taxes paid at the source on interest on bonds of the Caddo Central & Refining Co. of New York, and we are unable to make any finding in respect to such item.

A deduction in the amount of $10,500 is claimed for 1920 as representing Atkins' loss on stock in the Commercial Oil Co. While that

company was dissolved and a liquidator appointed in 1920, it appears that the company at the close of the year had on hand some leases, the value of which is not shown by the record. In the absence of such showing we are unable to find that a loss in the amount claimed, or any amount, was sustained.

The respondent included in Atkins' income for 1920 the sum of $4,788.31 as dividends received from the Cedar Grove Construction Co. The evidence shows that the company had no earnings or profits in 1920 or any other year to distribute as dividends and the amount paid stockholders was a partial return of their capital investment. The respondent, therefore, erred in holding that the amount of $4,788.31 represented dividends.

The remaining errors alleged are that for the year 1921 the Commissioner failed to find that Atkins sustained a net loss and declined to allow as a deduction from 1922 income such claimed net loss. No evidence was offered on these allegations.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*