## DAVID WILLIAMS, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29009. Promulgated February 6, 1929.

*Frank W. Wilson*, *C. P. A.*, and *F. H. DeGroat*, *Esq.*, for the petitioner.

*L. A. Luce*, *Esq.*, for the respondent.

**OPINION.**

LANSDON: There being no dispute as to the selling price of the stock received by petitioner in exchange for his stock in the Red Cliff Land & Lumber Co., Ltd., it remains only for us to determine the cost of said stock to him, as shown by its market value on November 4, 1918. The probate court of St. Louis County, Minnesota, found the value of this stock to be $194.64 per share for inheritance and estate tax purposes. This valuation was adopted by the respondent in determining the profit to petitioner from the sale, and this finding we are bound to approve, unless the presumption in favor of its correctness is overcome by convincing proof presented by the petitioner. *Elizabeth J. Bray*, 4 B. T. A. 42.

The findings made by the probate court were in accordance with the laws of that State and based upon estimates upon the value of the assets of the Red Cliff Co. These assets consisted of 24,000 shares of the Alberni-Pacific Land & Lumber Co., Ltd., out of a total issue of 30,000 shares of stock, or a four-fifths interest in said latter company. The state court made an exhaustive survey and appraisal of the assets of the Alberni-Pacific Land & Lumber Co., Ltd., and the petitioner in his testimony before this Board, in effect admits that, under conditions existing at said time, the valuation found by the

court was in harmony with his own judgment. In this connection the petitioner, under cross-examination by respondent's counsel, admitted that he was present at the hearings of the probate court when the valuation of this stock was under consideration, and that he thought at the time that the valuation fixed by the probate court was about right. When asked for his reasons for this conclusion, he explained that at that time he felt rather pessimistic about things; that the Alberni-Pacific Lumber Co. was a new corporation which had only been in existence since April, 1918; that it was without operating capital; and that Arthur Gilbert, who had theretofore selected the lands of the Red Cliff Co. and had given these holdings his personal attention, was the president of the new company and that in the latter part of November, 1918, he had died, which circumstance "seriously affected the company." When further pressed for an expression of his opinion as to whether or not the valuation of $194 per share was not too high at said time, he replied by saying that he did not believe that any minority holding could have been sold, but that "It might be that the entire holding of the company might have been sold at that price at that time." After all, it is the value of these assets on November 4, 1918, under conditions existing at said time, and not at the date of sale in 1925, as seems to be the theory of petitioner, that must govern. *Edwin M. Brown*, 1 B. T. A. 502.

A great deal of testimony was presented by petitioner of expert timber men who were familiar with values of properties similar to these, which compose the bulk of the assets of these corporations, but none of the witnesses had ever seen these properties or claimed to have any personal knowledge of their value. The petitioner sought to establish a value for the timber properties by introducing in evidence the contract of sale of them made in 1911 with the Von Alvensteben Co. for the expressed consideration of $2,228,700 and treating this fixed sum as their true market value in 1911. He then attempted to establish their value as of November, 1918, by testimony of expert witnesses to the effect that values of like properties, once established, rarely receded or diminished. The infirmity of this evidence, aside from its novelty and remoteness, is that it is based upon a false hypothesis, in assuming that the figure expressed in the Von Alvensteben contract is any evidence whatever as to the value of the properties at that time. The transaction provided for in that contract was an installment sale in which the purchase price was payable in amounts spread over a period of five years. In these circumstances the actual price received by the seller was not the sum total of the payments provided in the contract, but the cash paid, plus the

value of the contract itself at date of sale. *Appeal of Six Hundred and Fifty West End Avenue Co.*, 2 B. T. A. 958; *Somers Lumber Co.*, 2 B. T. A. 106.

On the whole, the evidence before the Board tends to support the findings of the probate court as being the nearest approach to a true valuation for said stock on November 4, 1918, that could be made under conditions existing at that time. The action of the respondent in respect of his determination of the value of this stock is approved.

Petitioner further contends that respondent erred in including in his determination of taxable gain to petitioner from the sale of his Red Cliff corporation stock the bonds received as part of the sales price, claiming that, inasmuch as this transaction was one that involved an exchange of corporate stock for securities in another corporation, such securities are excluded from such consideration under section 203 (d) (1) of the Revenue Act of 1926.

The section cited provides:

If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

From a careful study of the above section in connection with paragraphs (1), (2) and (4) of section 203, it is seen that it provides the one exception in this entire section that authorizes the inclusion of securities taken in such transactions as we have under consideration here in the computation of taxable gain.

Paragraphs (1), (2) and (4) deal exclusively in transactions where property other than money is involved, and exempt all such as fall within the classes therein described from gain or loss consideration. Other transactions, however, were considered, wherein the holder of corporation stock might partially liquidate his interests and take both cash and stock, or other corporate property in exchange therefor. Hence, the addition of paragraphs (d) (1), which takes such out of the exempted classes enumerated in paragraphs (1), (2) and (4) by providing that in such cases *the gain to recipient, if any, shall be recognized*, but in an amount not in excess of the sum of the money and the fair market value of the other property received. It is clear that in this determination the respondent followed the law. *John B. Atkins et al.*, 9 B. T. A. 140.

*Judgment will be entered for the respondent.*