R. A. BARKER *v.* GARRETT HANER *et al.*
(No. 6968)

Submitted October 27, 1931.    Decided November 3, 1931.

*Mark T. Valentine, Price, Smith & Spilman,* and *C. C. Chambers,* for appellants.

*Robert Bland,* for appellees.

LIVELY, JUDGE:

This partition suit involves title to 5.07 acres known as the 'Campus,' a part of a farm in Champansville District of Logan County. Edward and Nora Garrett claiming to be the owners of the "Campus" as a part of a 166-acre tract by deed from Wm. Leithead, leased that tract to W. G. Mac-Corkle for oil and gas, and he assigned the lease to Trojan Gas Company. R. A. Barker, an heir at law of Robert L. Barker, instituted this suit to partition the "Campus" among the heirs at law of Robert L. Barker, claiming title thereto under the will of Robert L., who died in 1904. His widow afterwards married Wm. Leithead, moved to the Dominion of Canada, and died there in 1922, devising her entire property to Wm. Leithead, her husband, who later conveyed the 166-acre tract to Edward and Nora Garrett in 1925. The heirs at law of Robert L. Barker, and appellants, MacCorkle, Ed-

ward and Nora Garrett, and Trojan Gas Company, each claim title to the campus under the will of said Robert L., which reads:

"I give and bequeath to my beloved wife Anna C. Barker, my present dwelling house and campus, including Five acre, surrounding same, to have and to hold during her natural life, that is to say, as long as she, the said Anna C. Barker occupies and *controlles* Said house and lot in person, but the *the* use of Said "Campus" is not to be let to tenants, and after the death of my wife Anna C. Barker, I will that in described property become a part of the Barker Cemetery, but the house I desire to be used for Sunday Schools, the Same to be controlled by a Competent Committee, the same to be chosen or recognized by the Barker relatives and family. The Balance of my real estate with which I am seized, I will to my wife, Anna C. Barker, to hold in fee as her own and if at any time She so desires to Sell Same, any said lands being more than One Thousand and Five Hundred Dollars, $1500.00, then I desire that my Bro. Frank Barker and my Sister, Eliza McComas, have $150.00 One Hundred and Fifty Dollars, out of said respectively, Bro. Frank Barker, One hundred Dollars ($100) and Sister Eliza McComas, Fifty Dollars ($50), I also will my wife Anna C. Barker all my personal property and house hold effects. I also appoint my wife Anna C. Barker, as executrix of this my last will and testament to qualify without bond, Given under my hand this the 4th day of July, 1904.

ROBERT L. BARKER, Testator.

Frank Barker,
F. S. Barker,
　　　Witnesses."

The cause was heard upon the pleadings, exhibits and evidence, and the court found in favor of their heirs at law of Robert L. Barker and declared them to be the owners of the land in controversy; directed partition to be made among them; and set aside, insofar as the "Campus" was concerned, the deed of Wm. Leithead to the Garretts, the oil and gas lease of the latter to MacCorkle and the assignment by him to Trojan Gas Company. MacCorkle, the Garretts and the gas company appeal.

The construction of the will is determinative of the issue; and the intention of the testator gathered from the whole instrument, aided by the situation of the testator and circumstances at the time of its execution, must be considered in arriving at the true construction.

The testator was a school teacher and his real estate consisted of the 166 acres. He was a social leader in his community and frequently entertained his friends and neighbors with community gatherings on that portion of the 166 acres which he commonly designated as his ''Campus,'' consisting of about five acres surrounding his eight-room frame dwelling house, and including the family cemetery, all of which he had permanently enclosed with a fence. He had beautified the enclosed ground with trees, shrubbery and well kept lawns on which the people of the community frequently met in Sunday School meetings, games, and civic gatherings. At one time before his marriage, he had taught a select school in the dwelling house. He had no children and was married late in life, a few years before his death. The will was prepared on July 4, 1904, by a Mr. Ball, the testator being physically unable to write it, and soon thereafter he died. One of the subscribing witnesses, Frank Barker, his brother, thinks the death was within a few days after the will was signed, but was not certain; and R. A. Barker, nephew, says he died in the fall of 1904. Both parties agree that that provision of the will which says: ''I will that *in* described property become a part of Barker Cemetery, but the house I desire to be used for Sunday Schools, the Same to be controlled by a Competent Committee, the Same to be chosen or recognized by the Barker relatives and family,'' is void because no devisee is named or indicated to take the title to the ''Campus;'' and if the provision be construed to be a charitable trust it is impossible to determine the beneficiaries. It is apparent that the testator desired the campus to become a part of the cemetary, the house to be used for Sunday Schools, and the whole to be controlled by a committee chosen or recognized by his family and relatives. He wanted his family cemetery preserved as such, and the house used for a particular purpose. After his wife's life estate ended, he did not want the

campus to pass into the hands of strangers, the graves of the Barkers desecrated, and the house used for other than a place for Sunday Schools. But the parties to this suit agree that the title to the campus is not transferred by this particular part of the will to any person, and the purpose fails for want of ascertainable beneficiaries. Defendants say they take title to the "Campus" under what they term the residuary clause of the will, under statute, sec. 13, chap. 77, Code 1923, which reads: "Unless a contrary intention shall appear by the will, such real estate or interest therein as shall be comprised in any devise in such will, which shall fail or be void or otherwise be incapable of taking effect, shall be included in the residuary devise (if any) contained in such will; and if there be no residuary devise therein, such real estate or interest therein shall go the heirs at law, as if he had died intestate." (Enlarged by Code 1931, 41-3-4.) Appellants argue that the words in the will immediately following the void disposition of the campus, namely, "The Balance of my real estate with which I am seized, I will to my wife Anna C. Barker to hold in fee," is a residuary clause giving to her, under the statute above quoted, the "Campus." On the other hand, plaintiff argues, in substance, that the devises and bequests in the will are all specific; that the words, "The Balance of my real estate of which I am seized," given to the wife in fee, is a specific devise of the balance of the 166 acres of which he was seized, and is in no sense a residuary clause. On these two propositions, the case depends, keeping in mind always the intention of the testator as the guiding light.

The clause thus brought in issue is not the usual form of a disposition of property not otherwise disposed of. A residuary clause is that part of the will by which the residue of the estate is disposed of. We do not see that there was any intention on the part of the testator to dispose of any residue of his estate by these words. He was then dealing with the balance of his land after taking therefrom the campus. He was making a specific devise in fee of that balance to his wife. No thought of other property then undisposed of, or any devise that might fail, was in his mind. Had he known that his devise that the campus should become a part of the

cemetery and the use of the house would fail, can we say that he intended his wife to have the "Campus" and that it should pass to her control and disposition? He had just said that she should have a life estate therein only. But, it is argued, that the disposition of the remainder having failed, she shall, under the law, take the whole estate therein under the so-called residuary clause. To hold that the clause disposing in fee to the wife the balance of that land of which he was seized, was intended as, and in fact is, a residuary clause would be inconsistent with the intention of the testator that she should have a life estate therein only, and after her death it should remain in the control of the Barker family and relatives for the designated purposes. Can we say that this clause was meant to be residuary? The language does not clearly make it such, and to hold it was so intended can only be done by necessary implication.

Defendants invoke the rule of construction that when a person makes a will he intends to dispose of all his property—that the presumption is against intestacy—as an argument that this clause should be construed as residuary in its nature. Plaintiff counters with the rule that the heir must not be disinherited unless it is done by express words of the will, or by necessary implication derived from the whole instrument. These are salutary rules of construction, and the force of their application is well stated in *Graham* v. *Graham*, 23 W. Va. 36, 40, as follows: "The testator having made his will, will be presumed to have intended to dispose of his whole estate, unless the contrary plainly appears. While this is true, there is another rule quite as binding on the court in the construction of a will, viz., that the heir must not be disinherited, unless it is done by the express terms of the will or by necessary implication. *Irwin* v. *Zane*, 15 W. Va. 646. The heir at law never takes by the act or intention of the testator. His right is paramount to and independent of the will, and no intention of the testator is necessary to its enjoyment. On the contrary, such right can only be displaced or precluded by direct words or plain intention evincing a desire on the part of the testator that he shall not take, etc. He needs no argument or construction showing intention in his

favor to support his claim. They belong to the party claiming under the will, and in opposition to him. *Augustus* v. *Seabolt,* 3 Metc. (Ky.) 155. In *Criswell* v. *Lawson,* 7 Gill & J. 227, it was held there should be no constrained construction to work a disherison where the words are ambiguous. * * * The intention of the testator must be gathered from the will itself, whenever it is possible to do so. Every word is to have its effect, provided an effect can be given to it not inconsistent with the general intent of the whole will when taken together. * * * *When a testator, in the disposal of his property, overlooks a particular event or matter which, had it occurred to him, he would probably have guarded against, the court will not employ or insert the necessary clause for supplying the omission, and, though the inference of intention be more or less strong, yet if not necessary or indubitable, the court will not aid the supposed intention by adding or supplying words.''* (Italic ours.) Here, we are told that the clause under discussion should be construed to be a disposition to the wife in fee of property not otherwise disposed of, or of property specifically willed which failed because that disposition was incapable of taking effect, or was otherwise void. ''Necessary implication means so strong a probability of intention that an intention contrary to that imputed to the testator cannot be supposed.'' *Bartlett* v. *Patton,* 33 W. Va. 71; *Hobbs* v. *Brenneman,* 94 W. Va. 320. In the last cited case *(Hobbs* v. *Brenneman)* it was contended that the word ''legatee'' should be construed to mean one who receives anything by will, either personalty or realty, in order that a devisee of real estate should participate in the distribution of the residuum under a residuary clause which directed distribution to the ''above named legatees.'' The court held that a ''legatee'' was not a ''devisee,'' and the legal distinction between them could not be destroyed by necessary implication derived from the whole will. And, in the instant will, we do not find a residuary clause in terms, and we cannot convert a specific devise into a residuary disposition by necessary implication. It was argued at the bar that the testator, having given all his personal estate and household goods to his wife, would have given the remainder of the ''Campus'' to his

wife instead of to his distant relatives, had he known that his disposition of the remainder of the campus after termination of her life estate therein would fail. To so hold, would be writing into the will, by necessary implication, something which does not clearly appear from the whole instrument. As above indicated, the intention seems to have been to give her a life estate only, and after its termination, to pass to control of the Barker family and relatives. A will must be interpreted as of the time of its execution. Barker, at that time, was seized of the 166-acre tract and was disposing of that tract. He was sick, and died a short time after the execution of the will. No other land is involved.

To sustain the proposition that the clause, "The Balance of my real estate with which I am seized, I will to my wife," is a residuary clause, appellants rely upon *Cornwell* v. *Mount Morris Church*, 73 W. Va. 96; and *Straton* v. *Hodgkins*, 109 W. Va. 536, 155 S. E. 902. In the *Cornwell* case the testatrix was disposing of the *interest* on a particular fund of money to three purposes, two of which purposes failed because of uncertainty and indefiniteness, but the other was certain and the court held that the gift of the *remainder of the interest* on that fund to the definite legatee was a residuary bequest of the interest on that fund and carried with it the void legacies given out of it; and that a bequest of interest on a fund without limitation as to time, is a bequest of the fund itself. In the instant case, the testator was disposing of the balance of his real estate then owned by him, and not the remainder of the "Campus" after the life estate had been carved therefrom. He was making a specific devise. In the *Straton* case there was a residuary clause of property "not herein disposed of," and it was held that ordinarily a residuary clause embracing all property not specifically disposed of carries with it lapsed or adeemed devises and legacies. That case affords no light upon the problem here presented— the determination of whether the clause under consideration is residuary, or whether a devise of specific real estate.

We conclude that the clause under consideration is not residuary in its nature, and that the remainder of the campus after the termination of the life estate does not go to the wife

by necessary implication. The decisions quite generally hold that the intention of the testator to dispose of his property to various persons and purposes must appear with legal certainty, otherwise the heir at law takes. The heir at law is not to be disinherited except by express words or necessary implication. The intention to disinherit must clearly and convincingly appear in the will. It would serve no useful purpose to cite the decisions.

We affirm the decree.

*Decree affirmed.*