668 S.E.2d 164

Steven W. Chip DANTZIC, David Shawn Dantzic, and Karen Sue (Dantzic) Tucker–Marsh, Plaintiffs Below, Appellees,

v.

Timothy DANTZIC, Executor of the Estate of Luetta Dantzic Emmart Miller, Deceased, Timothy Dantzic, Nathan Dantzic, Carla Emmart, Debra Emmart, and Keyser Church of the Brethren, Defendants Below,

Timothy Dantzic, Defendant Below, Appellant.

No. 33523.

Supreme Court of Appeals of West Virginia.

Submitted: March 11, 2008.

Decided: June 17, 2008.

**538**

Harley O. Staggers, Jr., Daniel C. Staggers, Staggers & Staggers, Keyser, for the Appellant, Timothy Dantzic, Executor of the Estate of Luetta Dantzic Emmart Miller.

Robert Melody, Keyser, for the Keyser Church of the Brethren.

Jason R. Sites, Barr Sites & Cissel, Keyser, for the Appellees, Steven W. Dantzic, David Shawn Dantzic, and Karen Susan Tucker–Marsh.

PER CURIAM:

This appeal is from a declaratory judgment action instituted by the appellees asking the Circuit Court of Mineral County to construe the will of Luetta Dantzic Emmart Miller (hereinafter "Mrs. Miller" or "decedent"). Timothy Dantzic (hereinafter "appellant" or "executor"), Executor of the Estate of Luetta Dantzic Emmart Miller, appeals from two orders rendered February 7, 2007. By those orders, the circuit court found that Mrs. Miller died partially testate and partially intestate, and further,

that an appraiser should be appointed to value certain real property.[1] On appeal, the appellant first argues that the circuit court's determination as to the effect of the will was incorrect and that the decedent's will disposed of all of her assets, and second, that the circuit court lacked jurisdiction to order an appraisal of nonprobate property. Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm, in part, and reverse, in part, the decisions by the circuit court. The circuit court's determination as to the effect of the will is affirmed. The circuit court's order appointing a special appraiser is affirmed with regard to the court's jurisdiction to order such action, but reversed insofar as it ordered the parties to split the costs of the appraisal.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts of the case are largely undisputed. Mrs. Miller, on May 5, 2006, executed a holographic will,[2] stating, in its entirety, as follows:

> I, Luetta Dantzic Emmart Miller, being of sound mind, declare this to be my last will and testament, in my own script, this 5th day of May, 2006.
>
> My estate consists of the residence and grounds at 164 Parkview Drive, Keyser, WV, along with furnishings. In order to divide, it must be sold.
>
> I appoint Tim Dantzic as my Executor/Administrator of the estate, that he be allowed to serve without bond. It will be up to him to sell at best price and pay all outstanding just debts including funeral expenses.

---

1. As will be further explained in Section I, *Factual and Procedural History, infra*, the special appraisal was ordered for land that is separate and distinct from the property listed in the will. *See also* n. 4, *infra*.

2. A "holographic will" is one that is "handwritten by the testator." Black's Law Dictionary 1629 (8th ed.2004). *See also Syl. pt.* 1, *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456

(1982) ("W. Va.Code, 41–1–3, provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent."). The validity of the holographic will is not questioned.

The balance is to be divided as stated: To Tim Dantzic –1/10 portion for serving as Ex./Ad. To Tim Dantzic 1/10 portion for living with me and taking care of the property and looking out for me. To Tim Dantzic 1/10 portion as his legitimate share. 1/10 portion to Chip Dantzic, 1/10 portion to Suzy Marsh, 1/10 portion to Shawn Dantzic. 1/10 portion to Nathan Dantzic (Danny's share) 1/10 portion to Carla Emmart, 1/10 portion to Debra Emmart. 1/10 portion to the Keyser Church of the Brethren[.] 10 equal portions of 10 percent equal[ ] 100%

In 1965 when I was left the total responsibility of the family—it seemed like an insurmountable task. However, with the help of mother and daddy and later Harry and with the love and grace of God we made it and the family Looks pretty good to me.

You've all done very well for yourselves and your family. Remember, you are a family and continue to love one another. I am very proud of you. I love and cherish each one.

Your Mother

Luetta Dantzic Emmart Miller

Following Mrs. Miller's death on May 23, 2006, her holographic will was produced and entered for probate. Appellant was appointed executor of the estate. The appellees filed a declaratory judgment action[3] seeking to have Mrs. Miller's will interpreted by the circuit court. As the case progressed, appellees filed a motion titled "Plaintiffs' Motion for Judgment on the Pleadings And/Or Summary Judgment with Respect to Plaintiffs' Amended Complaint." The executor responded thereto, and a hearing was held on February 2, 2007, which resulted in the two orders currently appealed to this Court.

In the first order rendered February 7, 2007, the circuit court found that "the decedent died **partially testate and partially intestate.**" (Emphasis in original). The circuit court found that "the decedent specifically named the assets she considered part of

her estate for the purposes of her will and the Court does not have the power to add assets to the decedent's definition of her estate." Further, "[t]he decedent's will in this case clearly indicates that the only estate contemplated by the decedent during the drafting of her will were [sic] the residence and grounds of 164 Parkview Drive and the furnishings thereof." The appellant argued that language in the will, stating that "the balance is to be divided" is a residuary clause disposing of all of the decedent's property; thus, the appellant argued that all of the decedent's assets were covered by the will. However, the circuit court disagreed and held that the word "balance" as used by the decedent "clearly refers to the balance of her estate, as defined by her in her will, once … all outstanding just debts and funeral expenses [were paid]." Thus, the circuit court found that the decedent died testate as to the residence and furnishings, but found that the decedent died intestate as to any other properties.

A second order rendered the same day appointed a special appraiser to determine the fair market value of 156.25 acres of real estate, in which the decedent maintained a life estate at her death.[4] In 1987, the parcel of land had been deeded by the decedent to some of her children, and Mrs. Miller had retained a life estate in the same. Even though the life estate interest extinguished at the time of Mrs. Miller's death and she held no further interest therein to be divided, the executor appraised the value of the land as required on the probate appraisal forms. As part of the probate appraisal form, there is a section with the heading "PART 2: QUESTIONNAIRE OF NONPROBATE REAL ESTATE". Under that heading, there is a question that states as follows: "5. Did the decedent own an interest in any real estate as a life estate including a dower interest?" The box beside of the answer "yes" is checkmarked, indicating Mrs. Miller's life estate interest in the property she had deeded to her children in 1987. Then there is a box

---

3. *See* W. Va. § Code 55–13–1, *et seq.*

4. As previously explained in note 1, supra, of this opinion, the 156.25 acres of land in which Mrs.

Miller had a retained life estate is not the same land as the property listed in the will document.

asking for the market value of the life estate, and a value [5] affixed by the executor of the estate.

The appellees herein expressed concern that the value set by the executor was too low and would subject them to a low basis for capital gains purposes if the property was sold in the future. The executor then removed the farm discount that had applied and increased the value of the appraised property. However, the appellees complained that the value still was not an accurate representation of the fair market value and sought an appraisal by an expert. The circuit court found that "[t]o avoid paying excess capital gain[s] tax when the 156.25 acres are sold, it is essential that the true market value of the land is assessed as of the date of the decedent's death." Thus, the circuit court appointed a special appraiser and directed the appellees herein and the estate to equally share the cost of the appraisal. All other issues were stayed pending appeal, and the appellant appealed to this Court.

## II.

### STANDARD OF REVIEW

This case flows from a declaratory judgment action filed to ascertain the effect of a holographic will. Because the purpose of a declaratory judgment action is to resolve legal questions, "a circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). Further, "a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo*; however, any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard." *Id.*, 195 W.Va. at 612, 466 S.E.2d at 463.

While the complaint was filed as a declaratory judgment action, the procedural posture of this case comes to this Court by way of the circuit court's grant of a motion for judgment on the pleadings. However,

this Court's inspection of the record reveals that, while the circuit court titled its order as one granting a motion for judgment on the pleadings, it is more properly considered a motion for summary judgment. *See* W. Va. Rules of Civil Procedure, Rule 12 ("(c) *Motion for Judgment on the Pleadings.*—After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). *See also* Syl. pt. 2, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997) (" 'When a motion for judgment on the pleadings under Rule 12(c) of the West Virginia Rules of Civil Procedure is converted into a motion for summary judgment, the requirements of Rule 56 of the West Virginia Rules of Civil Procedure become operable.' Syllabus point 1, in part, *Kopelman & Associates, L.C. v. Collins*, 196 W.Va. 489, 473 S.E.2d 910 (1996).").

The underlying motion filed by the appellees, which resulted in the underlying hearing and two orders, was styled "Plaintiffs' Motion for Judgment on the Pleadings And/Or Summary Judgment with Respect to Plaintiffs' Amended Complaint." The executor filed a written response to the motion prior to the hearing and had ample opportunity to respond to the same. Moreover, it is clear from the language of the circuit court's order and from the documents introduced for the lower court's consideration during the hearing on the motion, that matters outside of the pleadings were considered in reaching the lower court's decision. Thus, this Court will review the ruling as one granting summary judgment.

Determining that this Court should apply a standard of review for summary

---

5. While the actual value listed is a point of contention for the parties, it is irrelevant to our analysis in this case.

judgment motions, we are guided by the principle that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl.pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Thus, in undertaking our *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*, 192 W.Va. 189, 451 S.E.2d 755. Moreover,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter, id.* We are also cognizant that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter, id.* Mindful of these applicable standards, we now consider the substantive issues raised herein.

6. This assignment of error regarding discovery is summarily rejected. It has long been the rule of law in this State that

> [a] trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion. A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration.

Syl. pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996). In

## III.

## DISCUSSION

On appeal to this Court, the executor of the estate asserts four assignments of error: (1) the circuit court erred in deciding that a will drafted by a non-attorney should be strictly construed to create partial intestacy; (2) the circuit court erred in not applying the legal presumption that a decedent intends to dispose of her whole estate in her will; (3) the circuit court did not have jurisdiction to order the estate to pay for the appraisement of non-estate property; and (4) an award of judgment on the pleadings was improper without allowing the parties to first engage in discovery.[6] The first two assignments of error involve the construction of the will and shall be combined for purposes of discussion herein. The third assignment of error relates to the circuit court's authority to order a special appraisal of certain real property. This opinion will address each of these situations separately. We will first review the will construction, then we will consider the special appraisal.

### A. *Will Construction*

Regarding the issue of the will construction, the appellant argues that Mrs. Miller intended to dispose of her whole estate within the terms of her will and that her status as a non lawyer lay person means that her words should not be afforded their technical legal meaning. The use of the word "estate" did not mean only her residence and its furnishings. Rather, it meant all of her possessions and interests. The appellant further argues that this construction would

this case, there was no need for the circuit court to look outside of the will document itself to make its rulings on the will construction. Indeed, "[p]arol evidence of the intention of a testator in the disposition of his estate is admissible only where there is a latent ambiguity in the will." Syl. pt. 1, *Hobbs v. Brenneman*, 94 W.Va. 320, 118 S.E. 546 (1923). Thus, because the circuit court could determine the meaning of the words used in the will, outside evidence was neither warranted nor permitted to determine the effect of the will. There was no need for discovery on this issue, and the trial court did not abuse its discretion in granting the motion without allowing discovery.

adhere to the legal presumption that the testator intended to dispose of her entire estate, but the circuit court failed to follow the presumption. In response, the appellees argue that the circuit court's interpretation was correct as to the meanings applied to the words used within the will document. Further, the appellees aver that the words used by the decedent are plain and unambiguous, and the court must construe the words as written and not speculate as to what the testator meant.

 We are guided by the axiom that "[t]he paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy." Syl. pt. 1, *Farmers & Merchants Bank v. Farmers & Merchants Bank*, 158 W.Va. 1012, 216 S.E.2d 769 (1975). In determining the testator's intent, this Court has previously held that "[i]n construing a will the intention must be ascertained from the words used by the testator, considered in the light of the language of the entire will and the circumstances surrounding the testator when he [or she] made his [or her] will." Syl. pt. 7, *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957). Further, in determining the intent of the testator through the words of the will, this Court has held as follows:

> In construing a will, effect must be given to every word of the will, if any sensible meaning can be assigned to it not inconsistent with the general intention of the whole will taken together. Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd, unintelligible or unmeaning, for want of any subject to which they can be applied.

Syl. pt. 6, *Painter v. Coleman*, 211 W.Va. 451, 566 S.E.2d 588 (2002). Thus, our review will look to the words of the will to determine the intent of the testator.

The relevant portion of Mrs. Miller's will states as follows:

> My estate consists of the residence and grounds at 164 Parkview Drive, Keyser, WV, along with furnishings. In order to divide, it must be sold.

> I appoint Tim Dantzic as my Executor/Administrator of the estate, that he be allowed to serve without bond. It will be up to him to sell at best price and pay all outstanding just debts including funeral expenses.

> The balance is to be divided as stated: . . . .

Looking to the language of the will, it is clear that the decedent specifically named the assets she considered part of her estate for the purposes of her will when she wrote "[m]y estate consists of the residence and grounds at 164 Parkview Drive, Keyser, WV, along with furnishings." This Court may not enlarge the assets that Mrs. Miller considered part of her estate for purposes of her will.

 We recognize the principle that "[w]here a will is made it is presumed that the testator intended to dispose of his whole estate, and such presumption should prevail unless the contrary shall plainly appear." Syl. pt. 4, *Rastle v. Gamsjager*, 151 W.Va. 499, 153 S.E.2d 403 (1967). Moreover, it has long been held that "[t]he law favors testacy over intestacy." Syl. pt. 8, *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982). Significantly relevant to this case is the caution that

> [i]f a will was drafted by one who is not a lawyer, a court will be more inclined to assume that the will was written in the language of the lay person and will be more inclined to give effect to the language of the will in accordance with the subjective sense employed by the testator or testatrix, and not according to the technical meaning of the language . . . .

Syl. pt. 3, in part, *Transamerica Occidental Life Ins. Co. v. Burke*, 179 W.Va. 331, 368 S.E.2d 301 (1988). Further, "[l]egal presumptions and rules of construction may be resorted to only when the language of the will affords no satisfactory clue to the real intention of the testator." Syl. pt. 2, *Farmers & Merchants Bank*, 158 W.Va. 1012, 216 S.E.2d 769. However, such presumptions are overcome in this case by the testator's clear language defining her estate for purposes of the will and how it is to be disposed.

The appellant/executor argues before this Court that Mrs. Miller's use of the word

"balance" is a residuary clause. The appellant argues, therefore, that the remainder of Mrs. Miller's assets are thus brought under the will due to this residuary clause and that all assets will pass through the will, meaning that Mrs. Miller died fully testate. We cannot agree.

This Court has previously held that a clause devising to wife "balance of my real estate with which I am seized" was not a residuary clause, and therefore realty, devise of which failed, passed to the heirs at law. *See generally Barker v. Haner*, 111 W.Va. 237, 161 S.E. 34 (1931). Moreover, "[i]f there be no residuary clause in a will, the heirs at law of the testator take property[.]" Syl. pt. 3, in part, *id.* It has also been found that

[w]here a will disposes of all the personal estate of the testator, and specifically devises a single parcel of real estate to one of his heirs and makes no mention whatever of several other parcels owned by him, a strong presumption arises that he intended such other parcels to descend under the statute [and not the will].

Syl. pt. 1, *Coberly v. Earle*, 60 W.Va. 295, 54 S.E. 336 (1906).

Following our earlier-stated directive to look to the clear language of the will as a whole, it is apparent that the word "balance" was not used as a residuary clause. In the present case, the will states, in relevant part, that the estate (consisting of the specified residence and its furnishings) must be sold to be divided. The will further directs that it is up to the executor "to sell at best price and pay all outstanding just debts including funeral expenses." Immediately thereafter, the will states that "[t]he balance is to be divided as stated: . . . ." Taking the wording of the will as a whole, we agree with the circuit court that Mrs. Miller's reference to the "balance" does not reference other assets. Instead, it encompasses the portion of monies left from the sale of the indicated

home and furnishings after the debts and funeral expenses have been paid. Such balance is to then be divided according to the percentages set forth in the will.

Thus, the circuit court was correct in deciding that Mrs. Miller died testate as to the items mentioned in the will, *i.e.* her home and grounds at 164 Parkview Drive along with its furnishings, and intestate as to any other assets. Mrs. Miller specifically defined her estate to be considered in her will, and such definition will not be enlarged by the Court. Therefore, the circuit court's decision that Mrs. Miller died partially testate and partially intestate is hereby affirmed. The remainder of the decedent's assets not defined in the will are not controlled by the terms of the will, and Mrs. Miller died intestate as to those other assets.

## B. Special Appraisal

Turning to the issue of the special appraisal ordered by the circuit court, the appellant/executor argues that the executor filed his appraisal with the county clerk, and that any disputes regarding the appraisal should first be decided within the jurisdiction of the county commission. This argument relates to the second order entered by the circuit court, and concerns the parcel of land that Mrs. Miller deeded away in 1987, but in which she retained a life estate.[7] Moreover, the appellant argues that the appraisal will not benefit all parties because only certain parties have any interest in the deeded property. The appellant contends that the estate should not have to pay for part of an appraisal that will not benefit all of the parties. The appellees respond that the value that the executor listed on the probate appraisal form was low and would be the cost basis the beneficiaries would have in the property. In the event that the property would be sold in the future, the result would be an unnecessary increase in the capital gains realized by the parties.[8] Thus, the appellees contend, an

---

7. The property in which Mrs. Miller retained a life estate is not the same property disposed of in the will. *See* nn. 1 & 4, *supra.*

8. We recognize the appellees' desire to have an accurate appraisal of the property performed. The circuit court found that "[t]o avoid paying

excess capital gain[s] tax when the 156.25 acres are sold, it is essential that the true market value of the land is assessed as of the date of the decedent's death." *See generally* 26 U.S.C. § 1014 (2004).

accurate appraisal would benefit all parties. Because the declaratory judgment action was already within the realm of the circuit court, the appellees argue that such an order was appropriate to determine the fair market value of the real estate and to attribute the costs among the parties.

According to W. Va. § Code 55–13–4 (1941) (Repl.Vol.2000), which is part of the Uniform Declaratory Judgments Act,

> [a]ny person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic or insolvent, may have a declaration of rights or legal relations in respect thereto:
>
> (a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin or others; or
>
> (b) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or
>
> (c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

Based on this code section, specifically subsection (b), the appellees argue that the circuit court had the authority to order a special appraisal of the land in which Mrs. Miller retained a life estate interest. We agree.

Subsection (b) gives a circuit court authority "[t]o direct the executors ... to do or abstain from doing any particular act in their fiduciary capacity[.]" This power addresses matters involving the administration of a will or decedent's estate. As we indicated in *State ex rel. Johnson v. Reed*, 219 W.Va. 289, 292 n. 8, 633 S.E.2d 234, 237 n. 8 (2006), "[p]ursuant to W. Va.Code, 55–13–4 (1941), any person interested, as or through an executor, administrator, trustee or other fiduciary, in the administration of a trust or the estate of a decedent may have a declaration of rights to determine 'any question arising in the administration of the estate or trust[.]' "

This Court has previously recognized the authority of a circuit court to determine duties of executors or those with interests in estates. *Cf.* Syl. pt. 2, *Mongold v. Mayle*, 192 W.Va. 353, 452 S.E.2d 444 (1994) (" 'A declaratory judgment action is a proper procedure for an adjudication of the legal rights and duties of parties to an actual, existing controversy which involves the construction or application of a statute or of statutes.' Syl. pt. 1, *Arthur v. County Court of Cabell County*, 153 W.Va. 60, 167 S.E.2d 558 (1969)."). *See also* Syl. pt. 3, *Loar v. Massey*, 164 W.Va. 155, 261 S.E.2d 83 (1979) ("It is not error for a trial court in a declaratory judgment suit to construe a will, to set out reasonable procedures which a beneficiary of a trust determined to have been established by the will must follow to prove necessity for invasion of the corpus, absent specification by the testator of such procedures."); Syl., *Trail v. Hawley*, 163 W.Va. 626, 259 S.E.2d 423 (1979) ("Heirs, who will be the ultimate beneficiaries of a wrongful death award, may bring a declaratory judgment action against the personal representative of the decedent's estate to determine if the representative is acting in consonance with his or her fiduciary duty to the heirs when a real controversy over matters relating to the prosecution of a wrongful death action exists.").

Our analysis must determine if affixing the value on appraisal forms for an item that is a nonprobate matter is within the fiduciary capacity of the executor, subject to jurisdiction by the circuit court. We need look no further than W. Va.Code § 44–1–14 (2002) (Repl.Vol.2004), which provides in pertinent part as follows:

> (b) ... the personal representative shall, on the appraisement form prescribed by the tax commissioner, list the following items owned by the decedent or in which the decedent had an interest and the fair market value of the items at the date of the decedent's death:
>
> (1) All probate and *nonprobate real estate including, but not limited to, real estate owned by the decedent*, as a joint tenant with right of survivorship with one or more parties, *as a life estate*, subject to a power of appointment of the decedent, or

in which any beneficial interest passes by trust or otherwise to another person by reason of the death of the decedent[.]

(Emphasis added). In other cases, this Court has recognized the ability of the circuit court to make rulings with respect to appraisal items and the values affixed thereto. *See* Syl. pt. 4, *Aul's Estate v. Haden,* 154 W.Va. 484, 177 S.E.2d 142 (1970) ("The valuation placed on property of an estate by its appraisers is in West Virginia prima facie evidence of value, and the only method by which the State Tax Commissioner can have the value of any property of the decedent listed on the appraisement and inventory required to be filed under the provisions of Code, 44–1–14, as amended, and Code, 11–11–17, increased is to appeal to the circuit court of the appropriate county.").

Applying these provisions and the aforementioned authority to the present case, the life estate property that was ordered to be appraised is not part of the will for its administration. It is an expired life estate that is a nonprobate item. However, examining the facts of this case, there is a section on the probate appraisal form that includes questions about nonprobate property. Under the heading, "PART 2: QUESTIONNAIRE OF NONPROBATE REAL ESTATE", there is a question that asks if "the decedent own[ed] an interest in any real estate as a life estate including a dower interest?" The box beside of the answer "yes" is checkmarked, indicating Mrs. Miller's life estate interest in the property she had deeded to her children in 1987. Then there is a box asking for the market value of the life estate, and a value affixed by the executor of the estate. It is clear that the completion of the appraisal form, including the attestation to a fair market value of the nonprobate life estate interest, is a mandatory function that must be performed by the executor in his or her fiduciary capacity. Thus, the circuit court had jurisdiction over the matter under W. Va.Code § 55–13–4(b) to order the executor to accurately complete his mandatory duties

set forth in W. Va.Code § 44–1–14. Having found that the circuit court had jurisdiction, and finding no error with respect to the circuit court's order directing a special appraisal of the property that Mrs. Miller held as a life estate, that portion of the order is affirmed.

 A corollary question that must be addressed is the costs and fees of having an appraisal. The circuit court's order "DIRECT[ED] that Plaintiffs and the Estate equally share in the cost of the appraisal." W. Va.Code § 44–1–14 provides, in pertinent part, that

(i) [e]very personal representative has authority to retain the services of an expert as may be appropriate to assist and advise him or her concerning his or her duties in appraising any asset or property pursuant to the provisions of this section. *An expert so retained shall be compensated a reasonable sum by the personal representative from the assets of the estate.* The compensation and its reasonableness is subject to review and approval by the county commission, upon recommendation of the fiduciary supervisor.

(Emphasis added). We note that the use of the word "shall" implicates a mandatory connotation.

" 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982)." Syllabus point 1, *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35 (1997).

Syl. pt. 4, *State v. Brandon B.,* 218 W.Va. 324, 624 S.E.2d 761 (2005). Thus, the circuit court had no discretion to order the compensation of the appraiser equally from the assets of the estate and the appellees. Based on the clear wording of the statute, only the estate is to assume such costs.[9] To the

9. We note that this case began as a declaratory judgment action in the circuit court, and not as an appeal from the county commission. Thus, it would be improper for this Court to remand the

case to the county commission for a decision as to the reasonableness of any expert appraisal fees. However, we are cognizant that, pursuant to W. Va.Code § 44–1–14 (2002) (Repl.Vol.2004),

extent that the circuit court's order directed the plaintiffs below/appellees herein to pay a portion of the appraisal costs, it is hereby reversed.

## IV.

### CONCLUSION

For the foregoing reasons, we affirm the circuit court's findings that Mrs. Miller died partially intestate and partially testate. We also affirm the circuit court's ruling that ordered a special appraisal of nonprobate real property; however, we reverse the circuit court's decision that the plaintiffs/appellees herein should share the cost of the appraisal with the estate.

Affirmed, in part; Reversed, in part.

Justices STARCHER and ALBRIGHT concur in part; and dissent in part; and reserve the right to file separate opinions.

ALBRIGHT, Justice, dissenting in part, concurring in part:

I agree that this Court should affirm the lower court's determination of the effect of the will in this case. I am compelled to disagree with the majority's direction on the matter of a special appraisal because it is based on law which no longer has vitality and misinterprets the provisions of current statutory law.

There is no question that the lower court has authority under the Uniform Declaratory Judgments Act "[t]o direct … executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity," limited, of course, to current law governing the administration of estates. W.Va.Code § 55–13–4(b). Under the current statutory scheme, there is no provision for raising a court challenge to the appraised value of estate property, even by the Tax Commissioner. The circulated opinion contains a citation to *Aul's Estate v. Haden*, 154 W.Va. 484, 177 S.E.2d 142 (1970), a case involving a suit brought by an executor of an estate to challenge the Tax Commissioner's assessment of inheritance taxes because the assessment was based on some of the property in the estate being valued at a higher rate than that at which it had been appraised. With that backdrop, this Court in *Aul's Estate* said that the only way that the Tax Commissioner could have the value of estate property increased from the appraised value was by appeal to a circuit court. At the time *Aul's Estate* was decided, West Virginia Code § 11–11–17 expressly afforded the Tax Commissioner—and only the Tax Commissioner—the right to appeal the appraisement of estate property. However, when the Estate Tax replaced the Inheritance & Transfer Tax in 1985, the Tax Commissioner's statutory right to appeal appraisements of a personal representative was not preserved in that section or any portion of the 1985 enactment, nor was it restored by subsequent amendment.

The appraisal of estate property required by our current statute, West Virginia Code § 44–1–14, has importance in two settings. The first instance is if the estate, including non-probate property, is large enough to generate a federal estate tax return with the concomitant requirement of a state estate tax return. Given the generous federal estate tax exemptions currently available, there are relatively few estates in which the probate and non-probate property value has any significance in this context. The second instance in which appraisal becomes important is when beneficiaries or, as in this case, remaindermen after a life estate, may desire to sell probate or non-probate property of an estate and it becomes necessary to ascertain the property value as of the date of decedent's death for the purpose of determining whether any income tax is due the federal government or the state of West Virginia as a result of the sale. In either the estate tax or income tax framework, the appraised value assigned at the time of death is important because it establishes, presumptively, the market value from which either tax is calculated. I say presumptively because federal tax authorities leave no doubt that with clear and convincing proof the value fixed by the appraisement of an estate of a decedent by

"[t]he compensation [of the expert] and its reasonableness is subject to review and approval by

the county commission, upon recommendation of the fiduciary supervisor."

its fiduciary as of the time of death may be altered for tax purposes.[1]

Instead of recognizing the presumption employed by the federal authorities and its effects, the majority opinion sets a course that forces the estate fiduciary to expend a substantial sum of money to ascertain an expert's opinion of the value of non-probate property, thus producing a benefit to the interested remaindermen but yielding no benefit whatsoever to the estate or the fiduciary. By utilizing provisions of state law that have long since been repealed, the majority imposes a duty, accompanied by considerable expense, upon the fiduciary of the decedent's estate with absolutely no authority in law.

In this case, the fiduciary stated what he believes is market value of the subject property as of the date of the decedent's death. The remaindermen contend that an independently retained expert would arrive at a markedly different value. The remaindermen may prove their point by seeking the appraisal they desire. If such is acquired and presented to the fiduciary, the fiduciary retains the option of filing an amended appraisal, a courtesy the fiduciary would certainly consider extending. Even if the fiduciary refuses, the remaindermen are fully equipped to challenge the appraisal of the fiduciary upon any subsequent sale or transfer of the subject real estate. What is crystal clear is that this Court has no business imposing on the cash-strapped estate a costly exercise that is of no benefit to the estate, and serves only the interests of the remaindermen who by way of the majority opinion escape all costs of the appraisal exercise. All of which the majority justifies by citing an opinion of this Court which now has no application because it relies upon a statutory scheme that has had no force and effect for twenty years.

Having concurred in the determination of the effect of the will, I respectfully dissent from the position adopted by the majority regarding special appraisals for the reasons stated above.

I am authorized to state that Justice Starcher joins in this separate opinion.

1. The federal position is summarized in *Feldman v. Commissioner of Internal Revenue*, T.C. Memo, 1968–19 (1968), as follows:

 It is well settled that the value at which property is returned for estate tax purposes is prima facie the value for the purpose of computing depreciation and gain or loss on subsequent sale. Such value is not conclusive but is a presumptive value which may be rebutted by clear and convincing evidence. The value at which property is returned for estate tax purposes is, however, entitled to great weight. *Williams v. Commissioner*, 44 F.2d 467, 469 (C.A.8, 1930), affirming 15 B.T.A. 227; *Rogers v. Helvering*, 107 F.2d 394, 396 (C.A.2, 1939), affirming on this point 31 B.T.A. 994, 1006; Tax Regs. sec. 1.1014–l(a) and 3(a); and Rev.Rul. 54–97 (1954–1 C.B. 113).

 *See also* Bittker and Lokken, *Federal Taxation of Income, Estates and Gifts*, 1997 WL 439698 (W.G. & L.) (2008).